## Lessee of WATSON and Wife *against* BAILEY and others.

*Bargain and sale of the wife's land by husband and wife, who, by a certificate of a judge of the common pleas, indorsed on the deed, "per-*

APPEAL from the circuit court of Lancaster county. The wife of *Watson,* one of the lessors of the plaintiff, claimed the premises in this ejectment, as heir at law of *Margaret Mercer,* in whom the title was formerly vested. The defendants also derived title from *Margaret Mercer,* in virtue of a deed of bargain and sale of the premises, executed by her and her husband *James Mercer,* to *Nathan Thompson,* on the 30th

"sonally appeared before him, *and acknowledged the indenture to be their act and deed,* and "desired the same to be recorded, *she being of full age, and by him examined apart,*" not sufficient to pass the wife's estate.

Parol declarations of the wife that she executed the deed voluntarily, and if it was not sufficient, would execute and acknowledge it again, or do any other act to make the deed good,—inadmissible.

*May* 1785, who on the same day conveyed to the husband, of whom the defendants were heirs. On the day the deed was executed, the husband and wife appeared before a judge of the common pleas, who indorsed upon the deed the following certificate: " Lancaster county ss. Personally appeared before me, " the subscriber, one of the justices of the court of common " pleas for the county aforesaid, the within named *James Mer-* " *cer* and *Margaret* his wife, and acknowledged the above " written indenture to be their act and deed, and desired that " the same might be recorded. *She the said Margaret being of* " *full age, and by me examined apart.* In testimony whereof I " have hereunto set my hand and seal, this 30th day of *May*, " anno Domini 1785."

1808.
Lessee
of
Watson
*v.*
Bailey.

The chief justice, before whom the cause was tried in *May* 1807, held that the acknowledgment was defective, and that therefore the deed did not pass the estate of the wife. The defendants then offered to produce evidence of parol declarations by the wife, that she executed the deed voluntarily, and that if it was not sufficient she would execute and acknowledge it over again, or do any other act to make the deed good. The evidence was held to be inadmissible; and the jury found for the plaintiff. A motion was then made for a new trial, which was refused; and the defendants appealed to this court.

The act of assembly, upon which the main question turned, was passed the 24th *February* 1770, and is entitled " an Act for " the better confirmation of the estates of persons holding or " claiming under feme coverts, and for establishing a mode by " which husband and wife may hereafter convey their estates." The preamble to the 1st sect. recites, that it had been theretofore the usage, ever since the settlement of the province, in transferring the estates of femes covert, in many cases for the husband and wife to execute the conveyance in the presence of witnesses only, and in other cases, after such execution to acknowledge the same before a justice of the peace, or a judge of the common pleas or supreme court, the wife being separate and apart from her husband examined; whereby a great number of *bona fide* purchasers, for a valuable consideration, under such conveyances, were then become the just and equitable owners and possessors of such estates; and as doubts had arisen whether such deeds were valid in law to pass the estate of the wife in the lands intended to be transferred by the said deeds,

it therefore enacts that no conveyance whatsoever theretofore *bona fide* made by husband and wife in manner aforesaid, of any lands, tenements, or hereditaments whatsoever, should be deemed defective; but that the same should be valid in law for transferring and passing the estates, rights, titles, and interests of such husband and wife, according to, the true intent and meaning of the words thereof. The 2d section is as follows: " And in order to establish a mode by which husband and wife may *hereafter convey the estate of the wife,* be it enacted, that where any husband and wife shall hereafter incline to dispose of and convey the estate of the wife, *or her right of, in, or to,* any lands, &c. it shall and may be lawful to and for the said husband and wife, to make, seal, &c. any grant, bargain and sale, &c. for the lands, &c. intended to be by them passed and conveyed; and after such execution, to appear before one of the judges of the supreme court, or before any justice of the county court of common pleas, of and for the county where such lands, &c. lie, and to acknowledge the said deed or conveyance; which judge or justice shall, and he is hereby authorized and required to, take such acknowledgment; in doing whereof, *he shall examine the wife separate and apart from her husband, and shall read or otherwise make known the full contents of such deed or conveyance to the said wife; and if, upon such separate examination, she shall declare that she did voluntarily, and of her own free will and accord, seal, and as her act and deed deliver, the said deed or conveyance, without any coercion or compulsion of her said husband,* every such deed or conveyance shall be, and the same is hereby declared to be, good and valid in law, to all intents and purposes, as if the said wife had been sole, and not covert, at the time of such sealing and delivery; any law, usage, and custom, to the contrary in any wise notwithstanding." 1 *St. Laws.* 536.

*Montgomery* and *Tilghman* for the appellants. The act of 1770 makes no distinction between deeds to pass the wife's contingent right of dower, and deeds to pass her separate estate; it includes both. The present question is therefore of vast importance; because, however in some instances the ceremonies of this law have been complied with in deeds to pass her estate, it is notorious that the present form of certificate is almost universally indorsed upon deeds to bar her dower. This fact is material to shew the

true meaning of the act of 1770. The preamble recites an existing usage for femes covert to pass their estates by a simple bargain and sale before witnesses; and another usage to pass them by deed and acknowledgment, the wife upon such acknowledgment being examined apart from her husband, without more. The former usage had been sanctioned by a judicial decision in *Lloyd's Lessee* v. *Taylor,* (*a*) and the latter in *Davy* v. *Turner.* (*b*) In the one there was no acknowledgment or separate examination; in the other there was an examination apart, which included a communication of the contents to the wife. The 1st section of this act sanctions all deeds in conformity to either usage; and by the second section it confirms and establishes that usage under which married women passed their estate or right in land by deed, with an acknowledgment and examination apart. By confirming this usage, and making it written law as to all subsequent conveyances, it adopted and legalized that form of certificate which had been before used by the magistrate in similar cases; and accordingly, to this day, the form has undergone little or no change; and very many titles are now derived from femes covert under no other evidence than the defendants have shewn. This practice since the law, universal as to conveyances by which the wife has passed her dower, and very general as to those by which she has passed her fee, is irresistible evidence of a known intention in the legislature to make no change in the mode of pursuing the usage they confirmed. This is one view of the subject. But take it as a mode of conveyance devised by the act. What does the act direct? That the justice shall do certain things; but not that he shall recite all he does. He has said enough to shew that the substance of the act has been satisfied. The acknowledgment by the wife, that the indenture was her act and deed, and her examination apart from her husband, which is coupled with this acknowledgment, shewing the one to have been made during the other, are well set out. The only thing wanting is, that he made known to her the contents; and this is to be presumed. In the first place, this was necessary by the usage before the act; and yet in *Davy* v. *Turner,* where it was not set out by the indorsement, the usage was held to have been pursued. In the next place it is a principle, that where

1808.

Lessee
of
WATSON
*v.*
BAILEY.

(*a*) 1 *Dall.* 17.                    (*b*) 1 *Dall.* 11.

the law trusts to a judicial officer the power to do a certain particular, and he certifies he has done it, every thing forming that particular is presumed to have been done. Illustrations of this principle are found in 19 *Viner* 187. *pl.* 1. 39 *E.* 3. 7. *Bro. Action on the case pl.* 67. Now he has certified the separate examination, which includes the making known the contents, and her declaration that she acts without coercion. These are parts of one ceremony; and the whole being certified, the question is simply whether the parts are included. Credit is to be given to justices of the peace, that they have done right in the execution of their power. The presumption is in their favour. *The Queen* v. *Simpson.* (a) Here there is enough to shew that the judge had the act in his eye; and if it cannot be presumed that he did his duty, nothing short of a full statement of particulars will answer; and then not one title in fifty can stand. At all events if the court is to presume that he did not do his duty, the declarations of the wife should have been received to rebut the presumption.

*Hopkins* for the appellee. Whatever in common cases may be the presumption in favour of justices, none is ever made to give validity to the deed of a married woman; for the general presumption being that such a deed is void, it is essential that those things which constitute its validity, should plainly appear along with it. Hence when she joins in a fine, and undergoes a separate examination by writ, the examination is not presumed to have been correct, from any short minute of the judge; but it must itself always appear upon the writ, and be its own evidence. 2 *Inst.* 515. The usage before the act of 1770 took the place of a fine to save expense; but from the looseness of the usage, doubts were entertained whether the conveyances under it were valid. The legislature supposed them to have passed at most but an equitable title; and they were confirmed only in favour of purchasers for a valuable consideration. Taking this case then upon the foot of usage, the defendant's title is defective. They are not purchasers for a valuable consideration; but the deed of the husband and wife was a mere instrument to fix the fee in the husband. The dispute is between the *hæres natus* and the *hæres factus;* and equity will never aid a defective con-

(a) 10 *Mod.* 382.

veyance to transfer an estate from the former to the latter. The act however, instead of establishing the usage even for the past time, merely confirms certain deeds under it, and by the second section abolishes it for ever, by directing a new and explicit rule for the future. The preamble is very plain; it is to establish a mode by which husband and wife may *hereafter* convey *the estate of the wife.* Deeds to bar dower are therefore not included; and they may be safe under the old form of acknowledgment. The ceremony on the wife's part is the same that is required in a fine; and it should therefore be as explicitly entered on the deed. That a certificate of its performance is necessary, has not been denied; the only question then is, what does the present certificate contain. The joint acknowledgment is nothing; for the wife's is to be separate and apart from the husband. There is therefore no acknowledgment by the wife. The contents are to be made known to her; this does not appear. She is to declare that her acknowledgment is not the effect of coercion or compulsion; this does not appear; and these are of the very essence of the acknowledgment. It is not even certified that she was examined separate and apart *from her husband.* The act did not intend that the court should supply a defective certificate by conjecture and inference. Abuses of the husband's power, and collusion with the magistrate, were both to be guarded against; and it is obvious that such a certificate as this may be true in every part, and yet the act entirely defeated. If the contents are presumed to have been made known, and the requisite declarations to have come from the wife, it is idle to make a record of any part of the proceeding; a mere certificate, that the parties had been before the justice, would be sufficient ground for presumption. As to coupling the acknowledgment with the separate examination, it is impossible, because the acknowledgment is joint; and this furnishes another answer to the doctrine of presumption, namely, that where a magistrate sets out a proceeding manifestly defective, the law is not at liberty to presume that he has done right in the execution of his power; he may have had the law in his eye; but he has either misunderstood or disregarded it. A usage, since the act, to convey all the estates of married women in Pennsylvania, by such a deed and acknowledgment, would not weigh a straw against the act of assembly. As to the declarations, if the certificate is bad, it is as none; and then the

1808.

Lessee
of
WATSON
v.
BAILEY.

declarations can never amount to an acknowledgment. What the wife says upon the subject must be said before the proper officer apart from her husband, and be so certified. The law respects her interest too much to allow any weight to declarations elsewhere.

*Reply.* It is too strong to say that an universal usage for such an acknowledgment would not weigh a straw. If a usage could repeal the common law, how much more should it avail, when it affects the mere construction of a law. Lord *Coke* says usage has prevailed even against magna charta. 2 *Inst.* 28. We do not ask for aid to a defective conveyance; though if we did, the objection would have no weight; for the enacting clause of the first section goes further than the preamble, and confirms the estates of purchasers and all others; and in *Davy* v. *Turner* the husband himself was the defendant, and in *Lloyd's Lessee* v. *Taylor* a purchaser under a judgment against the husband. The whole is a question of law, whether, as the act does not require the justice to set forth the particulars, he is bound to do it. The enacting clause of the second section also goes further than the preamble; it establishes a mode of conveying the wife's *right of, in, or to,* any lands, which includes dower; and therefore our objection is not answered. *Examined apart* is a technical phrase, to which time has appropriated a comprehensive meaning of all that the act requires; it is apart from every body, and therefore apart from the husband. As to collusion with the magistrate, it is more likely to end in a formal certificate than otherwise; it is certainly not prevented by one more than the other. *Ut res magis valeat quam pereat,* the deed should be confirmed, unless the law is imperative.

YEATES J. This is an appeal from the decision of the circuit court of *Lancaster* county, overruling a motion for a new trial.

The facts of the case are shortly these. *Sarah,* one of the lessors of the plaintiff, claimed as the sister and heir at law of *Margaret Mercer,* who died without having had issue by her husband *James Mercer.* Mrs. *Mercer* was seised of the lands in her own right. On the 30th *May* 1785, *James Mercer* and *Margaret* his wife executed a conveyance of the premises to *Nathan Thompson* in fee simple, in consideration of eight hundred

pounds, and on the same day as is indorsed on the deed they appeared before *Henry Slaymaker*, one of the justices of the court of common pleas for *Lancaster* county, and " acknow-" ledged the within written indenture to be their act and deed, " and desired that as such the same might be recorded; she the " said *Margaret* being of full age and by the said justice ex-" amined apart. This the justice certified under his hand and " seal."

1808.

Lessee
of
WATSON
*v.*
BAILEY.

If this conveyance devested the said *Margaret Mercer* of her legal title to the lands, the plaintiff was not entitled to recover them, and the defendants would be entitled to a new trial. The validity of the conveyance, it is agreed, depends upon the true construction of the act of assembly, passed on the 24th *February* 1770, entitled " an act for the better confirmation of the estates " of persons holding or claiming under femes covert, and for " establishing a mode by which husband and wife may hereaf-" ter convey their estates." 1 *St. Laws* 535.

The preamble of the act recites that " it had been theretofore " the custom and usage ever since the settlement of this pro-" vince in transferring the estates of femes covert, in many " cases, for the husband and wife to execute the deed or con-" veyance in the presence of witnesses only; and in other cases, " after such execution to acknowledge the same, the said wife " being separate and apart from her husband examined; by " means whereof a very great number of bona fide purchasers " for a valuable consideration had become the just and equita-" ble owners and possessors of such estates." It then goes on to provide that such grants, deeds, &c. *theretofore* bona fide made and executed by husband and wife in manner aforesaid, shall be good and valid in law.

There can be no doubt that the decisions in this court, in the *Lessee of Davy and wife* v. *Turner* in *September* term 1764, where there was an acknowledgment by baron and feme, and which was carried by appeal to the king in council, (1 *Dall.* 11.) and in *Lloyd's Lessee* v. *Taylor*, in *April* 1768, where there was no acknowledgment (1 *Dall.* 17.), gave birth to this law. These decisions were founded on a principle highly conducive to the peace of society, that *communis error facit jus.*

The law, having in the first section put such bona fide purchasers in a state of perfect security, proceeds to establish a rule for future cases. It declares that " where any husband and

" wife shall *thereafter* incline to dispose of and convey the *es-* " *tate of the wife* or *her right* of in or to any lands, tenements " or hereditaments whatsoever," it shall and may be lawful for the husband and wife to execute any grant &c., and to acknowledge the same in the mode pointed out by the act, which is thereby declared to be good and valid in law to all intents and purposes, as if the said wife had been sole and not covert.

It has been contended that the acknowledgment, herein directed, extends to such deeds wherein the wife joins the husband to bar her of dower, equally with those which she before held in her own right; and that a practice, founded on the former loose mode of taking acknowledgments, has been continued; which it would be highly mischievous and inconvenient now to impeach; and that common usage has expounded the act.

If the first remark rested on solid grounds, I should long pause, before I adopted a construction which eventually might unsettle many estates. The maxim of " *communis error facit* " *jus*" has great weight with me, where the most injurious consequences would flow from counteracting it. I admit that the words standing by themselves might, from their generality, be supposed to comprehend cases wherein the wife releases her contingent interest of dower; but the whole section must be read together, in order to collect the true meaning of the legislature. They distinctly express their intention, and the object of their provision, in the beginning of the sentence thus: " And in " order to establish a mode by which husband and wife may " *hereafter* convey *the estate of the wife*, be it enacted &c." The words therefore " *such deed*," which are twice mentioned in the subsequent part of the section, evidently refer to deeds, whereby the estate of the wife is conveyed, and no other. This law had two distinct objects in view: the quieting and securing the titles of purchasers of the lands of married women, under the ancient usage, and prescribing a new method of conveying them, instead of the tedious and expensive ceremony of fines at common law; and both the title and preamble of the act strongly negative the construction set up by the defendants' counsel. I cannot therefore bring myself to believe, that the law under consideration had any effect on the acknowledgments pointed out by the act of 1715. 1 *St. Laws* 109. " No doubts had " arisen whether deeds so acknowledged were not sufficiently

" valid in law to transfer and pass the possible interest of the " wife," in case she survived her husband, to lands held by him during the intermarriage. The act of 18th *March* 1775, 1 *St. Laws* 703. entitled " a supplement to the act entitled an act " for acknowledging and recording of deeds," also points out acknowledgments, without prescribing their form. I presume it will not be contended, that the words of the act of 1770, as to acknowledgments, are adopted by this latter act. Thinking then, as I do, that this law of 24th *February* 1770 is susceptible of no other construction than that which I have mentioned, if I am correct therein, the mischievous consequences, which it is apprehended may flow from the usual mode of taking acknowledgments, cannot arise. It is by no means a very general practice for married women to transfer the lands which they hold in their own right; and the acknowledgments of such conveyances have in general been correct.

I do not take a literal strict adherence to the very words of the act, to be essentially necessary in these cases; but the substantial requisites, by which the rights of married women were intended to be guarded by the legislature, should be pursued. Lord *Hardwicke* has somewhere said, that the wife may be intimidated by cruelty on the part of the husband, as well as seduced by his flattery and extreme kindness, to do acts, which, on more mature deliberation, she would totally disapprove of. In this acknowledgment, her consent to the deed is not expressed by the justice, which alone could give it validity, without adverting to smaller matters. We may regret that the unskilfulness or negligence of the scrivener has led to this error; but we are bound to say, *ita lex scripta est;* and the party must abide by the consequences of his own acts.

It has been contended that we should give credit to a certificate of a judge of the common pleas, in the execution of his powers; and he having certified here that he had taken the acknowledgment, *omnia præsumuntur esse rite acta:* and that parol testimony was offered to the circuit court of the declarations of Mrs. *Mercer*, at other times, of her perfect freedom of will in executing the conveyance; and that she would join in any other act in confirmation of her deed. This, it is said, comes in aid of the legal presumption, and removes every presumption to the contrary. To this I answer, she should have appeared before a proper tribunal, and declared her consent

1808.

Lessee
of
WATSON
v.
BAILEY.

separate and apart from her husband, in the manner pointed out by the laws of the country. Such parol testimony ought not to be received. It leads to great uncertainty and mischiefs in tracing titles to real estates at a distant day. Our law is a system of policy. It is adapted to our local situation and the common safety. In *England*, the rights of a married woman to lands, can only be passed by the medium of a fine. Her examination must ever appear on the writ; and if the judge doubts of her age, he may examine her upon oath. 2 *Inst.* 515. These regulations guard the interests of the wife, as far as human prudence can effect that object. The act of 1715 directs that the justice shall certify the *acknowledgment* or *proof* on the back of the deed, under his hand and seal, together with the day and year when the same was made. The act of 24th *February* 1770 evidently points to the same mode of certificate; and an important trust is confided to the judge or justice before whom the acknowledgment is made. The justice of the court of common pleas has not conformed himself to the directions of the law " establish-" ing a mode by which husband and wife may convey the es-" tate of the wife," but has materially and substantially failed therein. The provision was introduced as a substitute for a fine, which if not pursued, the deed was not validated by the act.

In the present instance, the intention evidently was to devest the wife of her legal right in the lands, and vest it in the husband; and if, in any case, a court of justice would insist on at least a substantial adherence to the manner of acknowledgment prescribed by the law, it would be in such a one as is now before us. The conveyance from *Mercer* and wife to *Thompson*, and the reconveyance of *Thompson* to *Mercer*, bear equal dates, and are acknowledged on the same day before the same justice, and contain the same consideration money of eight hundred pounds.

I am therefore of opinion that this deed had no legal effect against the heir at law, after the death of the wife; that the parol testimony was inadmissible in aid of the defective acknowledgment; and that the decision of the circuit court be affirmed.

SMITH J. concurred.

BRACKENRIDGE J. took no part in the cause, having on the circuit ruled the point differently from the chief justice.

Judgment affirmed.