## IN THE

# SUPREME COURT

### OF

# PENNSYLVANIA.

## Eastern District, March Term, 1810.

### KIRK *against* DEAN.

#### IN ERROR.

*Philadelphia,*
*Monday,*
March 26.

THIS was an action of dower, brought by the defendant in error in the Common Pleas of *Montgomery* county, where the following case, which was agreed to be considered as a special verdict, was stated for the opinion of the court.

*A conveyance of the husband's land by husband and wife, without an acknowledgment by the wife agreeably to the act of 24th February 1770, does not impair the wife's right of dower.*

*William Dean* was seized in fee of the premises in question in his own right, in his life time, and during his coverture with the demandant. The said *William* and the demandant, by deed dated the 27th day of *December* 1777, conveyed the premises to *John Tomkins*, from whom the same, by several mesne conveyances, came to the defendant; *but the demandant never acknowledged the deed.* The said *William* died, leaving the demandant to survive him, who is still in full life. The said *William* did not die seised. If the opinion of the court upon the above facts shall be in favour of the demandant, judgment to be entered for her; if in favour of the defendant, then judgment to be entered for the defendant.

The opinion of the court below being in favour of the demandant, judgment was accordingly rendered for her, and the case was removed to this court by writ of error.

*Hemphill* for the plaintiff in error. The question turns upon the existence of a general custom, recognised both by this court and the legislature of *Pennsylvania*, for married women to convey their dower by a deed executed before witnesses, and without acknowledgment. Such a custom was recognised by this court in 1768, in the case of *Lloyd* v. *Taylor* (*a*), where it was found to be the constant usage for femes covert to convey their estates without acknowledgment or separate examination. This went much farther than the preceding case of *Davey* v. *Turner* (*b*), where the privy examination of the wife was held, by virtue of the custom, to have supplanted conveyances by fine. It ascertained the existence of a general usage to convey by such a deed as this case presents, even the fee-simple of the wife; *à fortiori* her contingent right to dower. A general custom thus confirmed, cannot require to be ascertained a second time as a fact. It must be considered as still existing, unless some written law of the land has abolished it. The only law which can in any way affect the case, is the act of 24th *February* 1770, 1 *St. Laws* 535; but that does not destroy the usage as it respects the conveyance of dower, on the contrary it confirms it, and leaves it as it stood upon the decision in *Lloyd* v. *Taylor*. The preamble of the first section is a plain recognition of the custom generally; and inasmuch as that part of the law which prescribes the ceremony of all future conveyances, has regard merely to the separate vested estate of the wife, and not to her right of dower, it follows that this case must be decided as though no new ceremony had been prescribed by the act. Had not that act been passed, certainly the demandant could not recover; or in other words, if that act does not apply to dower, the judgment below must be reversed. The argument against its applying is very strong. The title of the law is to establish a mode by which husband and wife may convey *their estates*, not the dower of the wife. The preamble to the second section carries on the same view, by defining the intention of the legislature to be, merely to establish a mode by which husband and wife may convey the *estate of the wife*. The effect of a deed acknowledged by the wife ac-

(*a*) 1 *Dall.* 17.          (*b*) 1 *Dall.* 11.

cording to that section, is declared to be the same as if she were *sole*, in which case she would have no right of dower; and the section does not by any of its terms embrace a conveyance by the husband of his estate, but seems intentionally to leave it as it was before the act. So much was this argument pressed in the case of *Watson's Lessee* v. *Baily (a)*, and so many inconveniencies were shewn to result from the contrary position, that the court expressly decided in that case, that the act had no effect upon conveyances to bar the wife of dower, and stated that it was that opinion in a great measure which induced them to rule the case as they did. The protection of the wife's dower by no means results from requiring an acknowledgment. The husband may notwithstanding, without her participation, and against her consent, deprive her of this right by a mortgage.

*T. Ross* for the defendant in error. The difference between this case and those of *Lloyd* v. *Taylor* and *Davey* v. *Turner*, is that the special verdict here says nothing of a usage, and there it was expressly proved as a fact to the jury. If such an usage is relied upon, it ought to be alleged as a fact, that an opportunity may be given to contest its continuance, or its validity upon any other ground. 1 *Tucker's Black.* 76. 79. *Money* v. *Leach (b)*. Its existence some years before the execution of this deed, between which periods an important statute intervened, is no evidence of its continuing to exist so as to govern the present case. Customs are frequently interrupted, not merely as to the enjoyment but as to the right; and a remarkable instance occurs as to land held by warrant and survey, which for more than seventy years after the settlement of the province, it was the custom to devise and transfer as personal property; but that custom was suddenly interrupted, and the property has for about fifty years been considered real estate. If however the court will recognise the existence of a custom to convey dower without a private examination in 1768, they will now take notice that it is abolished; and they will shew no favour to the custom, because it is in derogation of the common law. The act of 1770, did certainly notice the previous usage; but it states

(a) 1 *Binn.* 470.          (b) 3 *Burr.* 1767.

1810.

KIRK
v.
DEAN.

that many doubts were entertained of its validity, and it confirms estates before that time transferred in the customary way. From that time it abolishes the usage altogether, by devising a ceremony for all future conveyances of the wife's estate; and it does apply to cases in which the wife joins in the conveyance to bar her dower, as well as to any other. The very argument of the plaintiff in error proves it. The usage as to the conveyance of the fee-simple includes it is said a usage as to dower; if the law abolished the usage as to the greater, it therefore did as to the less. But terms cannot be stronger than those of the second section. The preamble it is true shews an intention to regulate the conveyance of only the wife's estate; but this term itself includes the contingent estate of dower; and when by the enacting clause, not only the estate of the wife, but her *right of in or to any lands*, is to be passed only by a deed with acknowledgment and privy examination, it certainly would not follow, even if the preamble did not include dower, that terms so broad and comprehensive would not. If a contingent right of dower is any thing, it is a right of in or to lands; and it certainly is something, or it could not be conveyed or released at all. The case then stands upon these principles. Dower is eminently favoured by the law, and the court should endeavour to protect it. At common law it cannot be released by a feme covert except by fine. An usage to the contrary must be strictly proved, and none is stated in the case. If the usage in 1768, is noticed by the court, then they will also take notice that it was the intention of the legislature to abolish it altogether, and that conveyances to bar dower were after the act of 1770 to be regulated only by that act. What is said by the court in *Watson* v. *Bailey* may be considered as extrajudicial. The cause did not turn upon that point, for it was a conveyance of the wife's fee-simple, which was clearly within the act of 1770.

The cause was argued at last *December* term, and in consequence of a division in the court, was held under advisement until this day, when the judges delivered their opinions.

TILGHMAN C. J. This case depends upon a single question. A married woman joined her husband in the execu-

tion of a deed, dated the 27th of *December* 1777, for the conveyance of land of which he was seised in his own right, in fee-simple. The deed was not acknowledged by the wife. Is she barred of her right of dower?

It has not been contended, that a married woman can by her deed convey her right to land, by any principle of the common law; but it is said that she may do so by the custom of *Pennsylvania.* That she might have conveyed her right of dower by deed without acknowledgment, before the act of 24th *February* 1770, I agree. But since the passing of that act, the law has been altered. Although the charter of *Pennsylvania* extended the common law of *England* to this country, yet a practice very soon prevailed, and was long continued, for married women to convey not only their right of dower, but their own estates of inheritance, by deed, sometimes acknowledged before a judge or justice of the peace, and sometimes not acknowledged. The case of *Davey* v. *Turner*, 1 *Dall.* 11. was decided in the year 1764. There the wife acknowledged the deed before a justice, and expressed her consent on a private examination at the time of acknowledgment. The special verdict finds a custom in support of the conveyance for fifty years and upwards. The decision was in favour of the conveyance, and the judgment of the Supreme Court was affirmed on an appeal to the king in council. Next came the case of *Lloyd's Lessee* v. *Taylor* in the year 1768. 1 *Dall.* 17. The deed of a feme covert executed in 1727, was held good, even without acknowledgment, evidence being given that " it had been the con-" stant usage of the province formerly, for married women " to convey their estates in this manner." These decisions were very proper on the principle that " *communis error facit jus.*" But although it was reasonable to confirm the estates of innocent purchasers, acquired under a mistaken principle pardonable in the infancy of the province, yet it was high time to put a stop to a practice, under which the rights of married women were left too much unprotected. Accordingly we find that the attention of the legislature was attracted by the decision of the two cases I have mentioned, and on the 24th of *February* 1770, they passed an act on this subject.

KIRK
v.
DEAN.

The title of the act is " for the better confirmation of the " estates of persons holding or claiming under feme coverts, " and for establishing a mode by which husband and wife " may hereafter convey their estates." The preamble recites the custom " ever since the settlement of the province, in " conveying the estates of feme coverts, in many cases for " the husband and wife to execute the deed in the presence " of witnesses only, and in other cases, after such execution, " to acknowledge the same before a justice &c.", and the first section confirms estates acquired under deeds of this kind.

I have mentioned the words of the title and preamble, because an argument has been drawn from the expressions which seem to relate to the *estate of the wife*. It is inferred from thence that there was no intent to establish a mode whereby the wife might convey *her right of dower*. This argument would have weight, if the same expressions were used in the second section, on which this question principally depends. I would here remark however, that I am not satisfied, that even by the words of the title and preamble, there was no intent to include the right of dower. This right may in common parlance well enough be called an estate of the wife. I presume that the custom, which is spoken of in the preamble, must have extended to deeds by which married women meant to convey their right of dower; and I make no doubt but it was the intention of the legislature to confirm the estates of all persons who held under deeds executed in the manner described in the preamble, by which married women had conveyed their right of dower.

The second section is thus expressed: " And in order to " establish a mode by which husband and wife may here- " after convey the estate of the wife," (still as I think, understanding by the word *estate*, every kind of interest which a woman could have in land belonging either to herself or her husband,) " be it enacted, that when the husband and " wife shall hereafter incline to dispose of and convey the " estate of the wife, or her right of in or to any lands, tene- " ments or hereditaments whatever, it shall and may be law- " ful for them &c;" (then follows the mode of acknowledging the deed by the wife.) Now I think it cannot be denied, that the enacting words are broad enough to take in the right of

dower. During the life of the husband the wife has a *right of dower* commenced, though not perfect till his death. It is such a right as she may pass, or at least extinguish, by her deed. Should it be granted then that the preamble of the second section does not extend to dower, still the enacting part comprehends it, and that is sufficient. The preamble ought not to control the enacting part of a statute, without very strong reason. In the present instance I see no reason at all. Why should a wife stand unprotected, when the husband wishes to bar her of her dower? Dower has been always favoured by the law. I believe the judgment of the Court of Common Pleas in this action, is the first decision directly upon the point, that has ever been given since the passing of the act. I know that it was mentioned incidentally in the case of *Watson* v. *Bailey* in this court; but it was not the question which the court decided. We have no *custom* here to contend with. The special verdict finds nothing about a custom. I will assert nothing positive as to the general mode of executing conveyances by married women since the act of 1770. But so far as the matter has fallen under my observation, it has been the practice to make no difference between deeds conveying a right of dower, and a right to lands of which the wife was seised in her own right. I make no doubt but some deeds have been executed differently; but I cannot allow that *that* should have any effect on the construction of the law.

It may be proper to take notice of deeds of mortgage of the husband's property. It is understood that by such deeds the wife may be barred of dower, though she was no party to the conveyance. But this depends on another principle, in which the law of *Pennsylvania* differs from the common law. The right of *creditors* prevails against the right of dower. A purchaser under an execution against the husband, takes the land discharged of dower; and the only mode of proceeding on a mortgage with us, is to sell the land by an execution. We have no court in which the equity of redemption can be foreclosed.

My opinion on the whole is, that the right of dower of the wife, is unimpaired by the deed which she did not acknowledge.

1810.

KIRK
v.
DEAN.

YEATES J. The single question in this case is, whether a deed executed by husband and wife, if not acknowledged by the wife, will bar her of dower in lands of which the husband was seised during marriage in his own right?

It is not suggested that the baron here used any coercion or compulsion towards the feme, or that the conveyance was not made *boná fide* for a full consideration.

The recording acts have no effect on the case. There exist no subsequent purchasers of the same lands.

That a feme covert might bar herself of dower by deed here, without fine as in *England*, I believe never has been doubted in *Pennsylvania* since its first settlement. The much contested case of *Davey* and *wife's Lessee* v. *Turner*, and that of *Lloyd* and *wife's Lessee* v. *Taylor*, turned on the conveyances of lands which were the estate of the wife. In the latter there was no acknowledgment by the wife, in the former there was an acknowledgment according to the usage that had obtained. Previous to the act of 24th *February* 1770, it will not be denied, that a deed like that under consideration would bar the wife of dower. The true construction of that law must govern our decision.

In the case of *Watson and wife's Lessee* v. *Bailey et al.* 1 *Binn.* 470, I delivered my opinion at some length, formed on much consideration. The late Judge *Smith* fully concurred therein. I then thought that the law in question *only* respected estates held in right of the wife, and I have seen no reason since to change my sentiments. Our decision was founded on the whole act taken together, and the occasion of passing it,—its *title,—preamble,—*the *professed object* of the legislature declared in the beginning of the second section,—and the *enacting* clause. It has been said in some of our books, that the title of a statute is not to be regarded in construing it, because it is no part of the law. *Hard.* 324. 1 *Ld. Ray.* 77. But we find that great respect has been paid to the title of an ambiguous act of parliament; *Hob.* 232. 3 *Bos.* & *Pul.* 284; and in *Crespigny* v. *Wittenoom*, 4 *T. R.* 792, 3, it was agreed by the judges of the King's Bench, that though the preamble cannot control the enacting part of a statute which is expressed in clear and unambiguous terms, yet if any doubt arise on the words of the enacting part, the preamble may be resorted to, to explain it. In *Archer* v. *Bo-*

*kenham,* 11 *Mod.* 161, the judges of the Common Pleas say, " in doubtful cases we may enlarge the construction of acts " of parliament according to the reason and sense of the " lawmakers, expressed in other parts of the act, or gues- " sed by considering the frame and design of the whole;" and their words are repeated by *M'Kean* Ch. Justice, in de- livering the opinion of the court in *Levinz* v. *Will,* 1 *Dall.* 434. I will not now repeat the reasons which we then urged, but will content myself with observing, that if the intention of the lawgivers was, that the *mode established* thereby, should be pursued in the common instance of the wife join- ing her husband in the conveyance of his lands sold for their common interest, it would have been very natural for them to make use of the word *dower,* or some other term of the same import. An additional argument has been urged by the counsel of the present plaintiff in error, which also has weight. The words of the second section are in the conclusion of it, " every such deed and conveyance shall be, and the same " is hereby declared to be, good and valid in law, to all intents " and purposes, as if the said wife had been *sole,* and not " *covert,* at the time of such sealing and delivery, any law " usage and custom to the contrary in anywise notwithstand- " ing." It seems incongruous to declare the deed of a mar- ried woman releasing her possible contingent interest in the lands of her husband, to be equally valid as if she had been unmarried at the time of its execution! It appears to me to designate plainly the act of the wife as to her own lands pre- vious to her intermarriage. When we speak of the dower of the wife during coverture, we mean the future interest which she has in the lands of her husband in case she shall survive him.

If it be asked why the legislature would not use the same precaution to prevent a wife's being unduly stripped of her dower, as to secure to her the lands of which she was seised in her own right, I answer that the former was deemed suf- ficiently guarded by the fact being submitted to a jury, to determine whether she became a party to the deed freely and voluntarily. As far as my experience has gone, I have observed that deeds conveying the estate of the wife, have generally pursued with strictness the literal expressions of the act of 24th *February* 1770. Where the wife has been

joined to preclude her from claiming dower, in case she survived her husband, the acknowledgments have been penned very differently, and in some cases, her consent has not been expressed therein. I have seen many instances wherein such deeds have been proved by the oath or affirmation of the subscribing witnesses, and never remember to have heard the validity of such deeds as to the wife questioned, unless the fact could be clearly ascertained that she was compelled to execute them against her will. It has been decided in this court, that the sale of the husband's lands under a *levari facias*, founded on a mortgage given by him alone, would bar his wife of dower. (I mention this, merely to shew how materially the settled law of dower in this commonwealth, varies from that of our sister states.) And even admitting, what I think highly equivocal, that the wife would *often* refuse to acknowledge a deed which she had executed in the presence of witnesses, she would seem to me to be placed on much safer grounds, by leaving the freedom of her will to be decided on by an impartial jury. I take it for granted that let the degree of coercion practised on the wife be whatever it might, she would be concluded by an acknowledgment made pursuant to the law in question.

I reduced the opinion, which I have delivered, to writing, shortly after the argument; but as it was judged advisable to make further inquiry into the practice, which had obtained under the act of 24th *February* 1770, I availed myself of the postponement, by carefully examining some of the books of records of the county wherein I live. My recollection on the subject I found not incorrect. I searched three of the record books of different deeds from husbands and wives after the passing of this law, and examined six hundred and eleven conveyances. Of that number only twenty-five deeds pursued the form of acknowledgment pointed out by the act. Ten of these deeds professedly conveyed lands whereof the wives were seised in their own right, and the greater part of the remaining fifteen did not recite the previous titles, whereby it could be ascertained in what right the lands were held. I have likewise been favoured with the researches of my professional friends in the counties of *York* and *Cumberland*, and the result of their inquiries shews, that a large proportion of the deeds recorded in those counties, are not

founded on acknowledgments conforming to the act of 24th
*February* 1770. It appears to me a serious inconvenience,
that the wives surviving should, for a defect in the acknow-
ledgments, be entitled to dower in the lands, for which they
had joined in deeds with their husbands to fair purchasers
for adequate prices. In *Ryalt* v. *Rowles*, 1 *Ves.* 365. Lord
Chief Baron *Parker* expresses himself thus: " I admit in
" many cases the preamble will not restrain the general pur-
" view, as in 1 *Jones* 163, *Palm.* 485; but it is a rule, and so
" agreed there, that when the not restraining the generality
" of the enacting clause will be attended with inconvenience,
" it shall restrain." According to Lord Chancellor *Erskine*
in *Mason* v. *Armitage*, 13 *Ves. jr.* 36, " If the enacting part
" of a statute will bear only one interpretation, the preamble
" shall not confine it; if that is doubtful, then the preamble
" may be applied to throw light upon it."

Upon the whole, after giving this case every consideration
in my power, I am of opinion that the judgment of the Com-
mon Pleas should be reversed.

BRACKENRIDGE J. In reason, can there be a distinction
found between that *right* which a feme covert retains in the
real estate which she had before marriage, and that which
she has acquired by her marriage in the real estate of the
husband? The right which she has acquired in the real
estate of the husband, is derived from the *Germans*, among
whom it was a rule that a virgin should have no marriage
portion, but that her husband should allot a part of his pro-
perty for her maintenance in case she survived him. " *Dotem*
" *non uxor marito, sed uxori maritus offert.*" *Tacit. de
Mor.* 18.

" *It is a life estate derived from the law*, and which a
" widow acquires in a certain portion of her husband's lands,
" tenements, and hereditaments, after his death, for her sup-
" port and maintenance, which is called dower. During the
" coverture, the wife can acquire no property of her own. If
" before her marriage, she had a real estate, this by the co-
" verture ceases to be her's; and the right thereto while she
" is married, vests in the husband. Her personal estate be-
" comes his *absolutely;* or, at least, is subject to his control.
" So that unless she has a real estate of her own, which is

" the case but of few, she may, by his death, be destitute of " the necessaries of life, unless provided for out of his " estate, either by a jointure, or dower." 1 *Cruise* 127. 134. The preceding citations have been made to shew the *reason* upon which the right of dower is founded, and entitled to the protection of the law; and, at the same time, to shew that it is not an estate *merely nominal* which the feme covert has in her husband's lands, but *substantial*, and standing upon the same foundations as her right to the estate which she had in her own right before. It is founded upon the marriage contract. The consideration is as good in law as any which could move from her in the purchase of an estate before marriage; and the life estate of which she is endowed by the marriage, is as absolutely in her, as any estate which could have come by descent, or acquisition.

Why is it then, that the law interferes with her alienation of this estate? It does not interfere to hinder her; but to provide that it shall appear to be her act. It is the humanity of the law in her behalf, having put her under the dominion of her husband to a certain extent, to take care, that an undue advantage shall not be taken of that subjection, to obtain from her by coercion, what she might not be disposed to grant of her free will and accord. Is she less liable to coercion by the husband in the alienation of this life estate, which the law has given her on her marriage, than of an estate in her own right before marriage? Or is she not more likely to yield to compulsion in the alienation of this estate, over which the husband may consider himself as having a control, and to which way of thinking he may be naturally led, from the circumstance of the estate having come by him? Is there not then at least equal reason for the provisions of the law, with regard to the solemnities of an act that shall bar her dower, as with regard to that which shall divest her of the estate which she had in her own right before marriage? But it may be immaterial whether equal or greater reason. The question will be, does the law make any distinction in form or substance, in the solemnities of alienation in the two different cases? The law of *England* makes none. The same solemnities in form and substance, are required in one case, as in the other. The right of either can pass no otherwise than by the solemnities of a fine. But in

the law of *Pennsylvania*, is there a distinction? By the charter there was none. On the contrary it was provided, " that " the laws for regulating and governing of property within the " province, as well for the descent and enjoyment of lands, " as likewise for the enjoyment and succession of goods and " chattels, shall be and continue the same as they shall be " for the time being, by the general course of the law in our " kingdom of *England;* until the said laws shall be altered " by the said *William Penn*, his heirs, or assigns; and by the " freemen of the said province, their delegates, or deputies, " or the greater part of them." No alteration had been made by the laws agreed upon in *England;* nor is it pretended that any alteration had been made by act of assembly of the province, on the subject of the wife's estate in lands, as to solemnity of alienation, prior to the act of 1770; which, it is alleged, can relate only to the wife's estate before marriage. Will the alienation of her dower estate then remain as in *England*, and be alienable only by the solemnity of a fine?

In answer to this question, we are referred to the case of *The Lessee of Davey* and *wife* v. *Turner, September* term 1764, 1 *Dal.* 11, where by special verdict, a usage is found in the then province, *prout* verdict. The case in which that verdict was found, was that of the wife's estate before marriage. And. it may be that the finding ought to be confined to the case of the alienation of such estate. But it is not contended, and should not be contended that it ought; for in that case, no usage being found with regard to the alienation of estates in dower, they would remain alienable only by a *fine*. And, if what is contended to be the more *independent estate*, that of the wife before marriage, was alienable under *the usage*, the estate of dower with less reason might require a fine.

The usage found in the special verdict, was that of " going " before some justice of the peace, in the county where the " lands lie, out of court, and for the said justice to examine " the wife in private, and apart from her husband, respecting " her signing and executing such deed, and to interrogate " her whether she became a party to, and executed such " deed, with her full and free consent; and, on her declara- " tion that she freely consented, for the justice to certify the " same under his hand and seal."

1810.

KIRK
v.
DEAN.

We are referred in the next place, to the case of *The Lessee of Lloyd* v. *Taylor, April* 1768, 1 *Dall.* 17. In this case there " was not even an acknowledgment, or private examination." But, it appearing in evidence, that it had been the constant usage of the province formerly for femes covert to convey their estates in this manner, without an acknowledgment, or separate examination, and that there were a great number of valuable estates held under such titles, which it would be dangerous to impeach at this time of day, the court gave a charge to the jury in favour of the defendant, founded on the maxim, *communis error facit jus;* and the jury found accordingly. This was also the case of the wife's estate before marriage. If the usage however is not considered as extending to the alienation of a dower estate, it must remain alienable by fine only. But though there might be some reason for not extending it to the estate of dower, as more likely to be the subject of compulsion, and requiring greater solemnities in the alienation, yet it has been the universal understanding, and it is not pretended on any side of the argument in this case but that it did come under the *usage.* Why does not the usage then still exist with regard to the alienation of the wife's estate of dower? It has been decided that it does not exist with respect to the estate of the wife which she had before marriage. *Lessee of Watson* and *wife* v. *Bailey and others.* 1 *Binn.* 470. What reason is there why it should be considered as existing with regard to her right of dower? The reason is against the existence, or continuance of it, if we are correct in conceiving that, *ex majori cautela*, the provisions of solemnity ought to be in its favour, in consideration of the greater likelihood that she will be subject to compulsion where she is to pass an interest which may be considered as but nominally hers. It is said that an act of assembly, 24th *February* 1770, has put an end to the usage so far as respects the estate of the wife before marriage. Why not to the usage as respects the estate of dower? It is answered that it does not come within the intendment of the act. What ground of public policy or general inconvenience is there, to account for the legislature not intending to embrace the securing one estate to the wife, as much as the other? The terms embrace it: " *her right of, in, or to* " any lands, tenements or hereditaments *whatsoever.*" But

the act was in consequence of the question made in the cases of *Davey* and *wife* v. *Turner,* and *Lloyd's Lessee* v. *Taylor,* which were both cases of the wife's estate before marriage; and the introductory words of the section speak of establishing a mode by which husband and wife may convey the *estate of the wife. Few general laws are enacted, to which particular cases have not given rise;* and though it is a sound construction of the decision of a court, to confine it to the case under adjudication, yet the preamble of a law has never been considered as restraining the enacting words of the law, to the particular case recited in the preamble, upon the ground of its having attracted the attention of the legislature in making the law. The courts of law, taking the preamble into view, have restrained or enlarged by it, according to their ideas of the policy of the enacting part. And they cannot do otherwise, because it is the only principle by which they can undertake to determine, where the terms are liable to different constructions, what the legislature intended to embrace. It is no uncommon thing for the general remedy to be intended to overleap the particular mischief; for where there is the same mischief, there is the same reason for that remedy. And in the case of a remedial law, the construction is to be liberal.

In the case before us it cannot be questioned, but that the wife's right of dower, though not *eo nomine,* is her estate, in a most especial point of view; and is regarded in the law with the most peculiar attention. " The tenant in dower, is " so much favoured, as that it is the common by-word in " the law, that the law favours three things, life, liberty and " dower;" and a widow's right of dower commences with her marriage. It is held so sacred a right, that no judgment, mortgage, or recognisance, or any incumbrance whatever made by the husband after marriage, can at common law, affect her right of dower. Even the king's debt cannot affect her. 1 *Dall.* 484.

The cases of *Davey* and *wife* v. *Turner,* and *Lloyd* v. *Taylor,* in which the usage came in question, respected the alienation of the wife's estate before marriage. But it cannot be assumed, but that cases may have existed, or have been more numerous before this period, or before the act of assembly, where the alienation affected the right of dower. Was the de-

fect of solemnity in these cases not contemplated by the act? Or, were they left on the ground of usage as sufficient to protect them? These cases were certainly within the like reasons, and required the like relief. I can devise no reason why the legislature should not have left the one class of cases to the usage as well as the other, unless they had intended to withdraw the protection of the law from the estate of dower, and leave it to the wife to dispose of it, *coerced or not* as the case might be, and that her simple signature proved, should convey the estate, as if *sole.* It is contended that this was the case. This construction receives countenance from the act of assembly of 1700, which subjects lands to the payment of debts, without any saving of the wife's estate of dower; and from the judicial construction of the act, that such saving cannot be inferred. And what is still more, it *has been* determined that on *a mortgage* executed by the husband, though the wife be no party to it, the wife's dower is bound, and her estate passes by the sale. This is determining it to be in the power of the husband, by mortgage or by subjecting to *judgment*, to have the estate sold, and barred of dower. Did the law then mean to leave an estate so *precarious*, without any special protection of an act in its favour? Or shall we so construe it, as applying the maxim *de minimis non curat lex?*

That the terms of the act of 1770, may admit of a construction unfavourable to the protection of dower in the solemnities of alienation, is certain, because the judges of this court, then sitting, in the case of *Watson's Lessee* v. *Bailey*, did put a construction upon it, unfavourable to the protection of the right of dower, by confining the act, as they declared, to the *case of the wife's estate before marriage.* It is true that the point decided, did not necessarily involve this question, and that what was said, must in strictness, be considered as incidental; yet it as clearly appears what their opinion was, as if on the point directly decided. For, it is given as a ground of their decision, that a *distinction* did exist, and that the act did not extend to the case of the *wife's estate of dower;* at least it is assumed as narrowing the extent of the objection which might be made on the ground of unsettling estates. Yet the effect of the acknowledgment upon the wife's *right of dower* not being the point immediately

1810.

KIRK
*v.*
DEAN.

.before the court, the observations in strictness come under the head of *obiter dicta*, and have the weight of reason, not of *authority*, which are very different things in all cases of the " *non ita refert quæ sit lex, quam quod sit nóta;*" and this partakes somewhat of the nature of those cases, not derived so much from the principles of moral right, and natural justice, as positive institution. I consider myself therefore as not departing from the maxim of *stare decisis*, in canvassing the reason of what is said in that case as to this point. And I observe that the consideration which is expressed by the court, the " unsettling estates," does not weigh so much in the case of dower, which is but a life estate. Dowagers being generally advanced in years, the estate in the hands of a purchaser cannot remain so long incumbered with the claim; and the construction of the law settled, will prevent future uncertainty. I apply myself therefore, unembarrassed with these considerations, to examine the words, and the bearing of the act.

The words, " *estáte of the wife*," unquestionably lead one to think only of that estate which she had before marriage. In common parlance this would be taken to be the application, and the terms *right of, in, or to any lands* &c. would be taken as saying nothing more than what had been said under the word *estate;* being, in the language of acts of the legislature, repeated in other terms, for the sake of greater certainty in the extent which was meant to be given them. But a more extensive knowledge of the law would carry the mind to those estates, which might not be called the wife's, strictly speaking, because she had never come to the possession of them; estates in remainder, in reversion, &c. And I take it the common mind would not think of the *right* of dower as the *wife's estate* at all, until after the husband's death. But in legal acceptation it is the *wife's estate;* and right of, in, or to, will embrace the right of dower. In this doubtful case what shall govern? Exposition by usage? I know nothing of that. It is not found by special verdict what it has been, under, or since this act. Nor is it even matter of notoriety to me how it is, could I be supposed in that case to take notice of it. " The expounding by usage," is out of the question; for I cannot judicially have it before me. Out of the *terms* I can look only to the policy of the act, and the

effect of the construction; *à parte ante*, and *à parte post*. This must be the ground of consideration. For it is the effect of a construction that must govern, where we inquire into the extent of terms in a dubious case.

In construing the act liberally in favour of protecting dower, it is possible that there may be cases where, against good conscience, dower may be claimed; where in fact there was a voluntary alienation, and the *bona fide* purchaser may be subject to the incumbrance of a life-estate. But, in that case, he has his remedy against the representatives of the husband who undertook to dispose of the whole, and received a consideration as for the whole estate. And the cases must, be few where coercion actually did take place; or where, against good conscience, it is alleged; or where indemnification cannot be had against the husband's estate in the ha. 's of his representatives. But the effect of extending the p )-visions of the act in favour of dower is permanent; and upon that ground I have brought my mind to construe the act as embracing the right of dower, under the words of the act, " *right of in or to any lands, tenements, or hereditaments* " *whatsoever.*" At the same time I cannot get over the express words to my satisfaction, *right of* &c. were I disposed to confine them to the wife's estate before marriage, and to construe them as explanatory of what is meant by the wife's estate, viz. not only her estate in possession, but in expectancy; not only the fee itself, but the right appurtenant of way, &c. For, if we leave out the pronoun *her*, and repeat the *noun* for which it is used, viz. the word *wife*, the sentence will be, wife's estate, or wife's right of, in, or to, which bringing it more explicitly to the mind, renders it more difficult to say that wife's right of dower is not included.

Legislative construction is of weight in a doubtful case; and in an act of 20th *January* 1806, extending the power of taking acknowledgment of deeds to the aldermen of the city of *Philadelphia*, the words are to take and receive *the separate examination* of any *feme covert*, touching or concerning her *right of dower*, or the conveyance of her estate or right in or to any such lands, tenements or hereditaments, agreeably to the act of assembly entitled " an act for the better " confirmation of the estates of persons holding or claiming

" under *feme coverts*, and for establishing a mode by which " husband and wife may hereafter convey their estates, pass- " ed 24th *February* 1770." Why the words, the separate examination of any *feme covert* respecting *her right of dower*, if it had not been considered that the acknowledgment of the feme in the case *of dower*, must be on a *separate examination?* And why a *separate examination*, unless with a view to ascertain the mind with which she did the act? It is by implication, a construction. It is impossible not to see that the legislature took it for granted that in the case of *dower*, as well as in that of the wife's estate before marriage, the separate examination was to take place.

This language of the legislature goes at least some length to shew the general understanding of the country; and upon all the inquiry I have been able to make, by an inspection of acknowledgments in the case of a dower estate merely, I do not find any distinction made, but that it has been the general understanding that the cases were the same. Nor in the course of my professional practice do I recollect a distinction suggested, except by the register of *Alleghany* county, who alleged, that such distinction was known in the county of *Dauphin*, where he had resided. On the ground of usage or custom, I have not sufficient to justify a conclusion, that the original usage of the state has been continued, and that the case of dower has not been considered as coming under the words of the act of assembly of 1770, for the taking the acknowledgments of feme coverts in the passing their estates.

Judgment affirmed.