## Graham and Wife *versus* Long.

65  383
165  160,

1. A married woman's power to convey or charge her real estate in Pennsylvania is derived solely from Act of February 24th 1770, § 2.

2. The requirements of that act as to separate examination and acknowledgment must be strictly pursued and so appear on the magistrate's certificate.

3. The bond and warrant of attorney to confess judgment of a married woman are absolutely void.

4. A judgment on a scire facias issued on a judgment on such warrant is void, and a sheriff's sale under it conveys no title to the purchaser.

5. A resulting trust in land of which the title is in a married woman cannot be proved by her acknowledgment.

6. Land was conveyed to a mother and two daughters; in an action by one, a married woman, her receipt with the assent of her husband to her mother for "six hundred dollars money I had in the property my mother now owns," was inadmissible on the question whether the conveyance as to her third was a mortgage.

7. A mortgage by parol defeasance or a constructive trust may exist in a married woman; but it must be made out by a formal declaration, accompanied by a certificate of separate examination and voluntary acknowledgment.

March 10th 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Perry county :* No. 60, to May Term 1870.

[Graham *v.* Long.]

This was an action of ejectment, by William J. Graham and Margaret his wife, in her right, against Jane Long, for the undivided one-third of a tract of land.

The whole tract was, on the 30th of March 1859, conveyed by Samuel Lupfer, for the consideration of $1800 to Mary Long, Jane Long and Margaret Long; Mary Long was the mother of Jane and Margaret—Margaret was married about March 1862 to William J. Graham. Mary Long died about May 1868, leaving these two daughters to survive her.

The plaintiffs proved the foregoing facts and rested.

The defendant offered in evidence the following receipt:—

"Received, April 18th 1865, of Mary Long, six hundred dollars, money I had in the property my mother now owns.

$600.00.          MARGARET GRAHAM."

It was objected to, admitted and a bill of exceptions sealed. The defendant gave evidence that the body of the receipt was in the handwriting of William J. Graham, the husband.

She gave in evidence that Mrs. Long lived on the land in question until her death and that she owned no other real estate. She also gave in evidence the will of Mrs. Long, dated January 16th 1866, and proved June 1st 1868, by which she devised to her daughter Jane Long, " my entire interest in the real estate we now live on and occupy."

The court Graham, P. J. charged: * * * " But the defendant alleges that although the deed is absolute on its face and vested the legal title in Margaret Long, that in fact Margaret loaned to her mother at the time of purchase $600, one-third of the purchase-money; and Margaret took a conveyance of an undivided third of the land to secure the payment of the six hundred dollars loaned to her mother at the time of purchase. To establish this, the defendant relies upon the written declaration of Mrs. Graham, made in 1865, * * * (the receipt). This the defendant contends is satisfactory evidence" of her allegation. * * * " If this is the truth of the case,—if at the time of purchase Mrs. Graham loaned to her mother $600, and did not invest it in purchasing an interest in the property, and this loan has been repaid,—the deed, although absolute on its face, would be in law a mortgage to secure the loan of money; and on the repayment of the loan, the deed would be of no validity; and in this aspect of the case your verdict should be for the defendant. But to justify a verdict for defendant, the evidence ought to be satisfactory and convincing to your mind that Margaret Long, at the time of purchase, loaned the $600 to her mother, and did not invest it in the property as a purchaser. To overcome the effect of the deed, which conveys to Margaret one-third of the property, you ought to be well satisfied that the conveyance was taken by her to secure a loan, and not as a pur-

[Graham v. Long.]

chase of the undivided third part of the property conveyed. If the evidence fails to satisfy you that the deed was taken and intended by Margaret as a security for the loan of money, then the plaintiffs must recover, and your verdict should be in their favor. The payment afterwards of $600 to Mrs. Graham by her mother, can have no effect in divesting Mrs. Graham's title, if she had purchased originally an undivided third. The payment of the purchase-money to Mrs. Graham, she being a married woman, would not divest her title or defeat her recovery; and it is only in the event that the evidence satisfies you that Margaret Long, now Mrs. Graham, took the deed in her name as security for a loan of money, and not as a purchaser, that you would be justified in finding for the defendant."

The verdict was for the defendant. The plaintiffs took a writ of error and assigned for error the admission of the receipt and the charge of the court.

*C. A. Barnett*, for plaintiffs in error.—The receipt was not evidence to show a sale of Mrs. Graham's real estate: Rumfelt v. Clemens, 10 Wright 455. To constitute a mortgage, there must be a defeasance contemporaneously, or if afterwards, in pursuance of an agreement made at the execution of the deed: Directors of Poor v. Royer, 7 Wright 146; Kunkle v. Wolfersberger, 6 Watts 125; Rhines v. Baird, 5 Wright 256; Colwell v. Woods, 3 Watts 188; Kelly v. Thompson, 7 Watts 401; Reitenbaugh v. Ludwick, 7 Casey 131; Wilson v. Shoenberger, 7 Casey 295; Guthrie v. Kahle, 10 Wright 331; Houser v. Lamont, 5 P. F. Smith 311; Penna. L. Ins. Co. v. Austin, 6 Wright 257. The question of mortgage or no mortgage was for the court: Welsh v. Dusar, 3 Binney 329; Wharf v. Howell, 5 Binney 499; Stoever v. Stoever, 9 S. & R. 434; Dennison v. Wertz, 7 S. & R. 372; Halo v. Schick, 7 P. F. Smith 319.

*B. F. Junkin*, for defendant in error, referred to and commented on: Rumfelt v. Clemens, Penna. L. Ins. Co. v. Austin, Houser v. Lamont, *supra*.

The opinion of the court was delivered, July 7th 1870, by

SHARSWOOD, J.—Nearly five centuries ago it was recognised to be a settled maxim of the law that no feme covert could be barred of her frank-tenement or inheritance by her confession merely, without an examination in due course of law: Mary Partington's Case, 10 Rep. 42 l, citing the Year Book 44 Edw. 3, 28 a. This sure and uncontrollable ground of judgment has never been questioned since at law or in equity. The cases which have been decided in this court without an exception most abundantly sustain it. It has frequently been attempted to escape from or evade it where it has seemed to work great and palpable injustice, but

15 P. F. SMITH—25

always without success. It must always triumph over the hardship of any particular case; for it is a barrier which has been erected by common and statute law, to protect the property of married women which nothing but the sovereign authority of the legislature is competent to overthrow or change. A married woman's power to convey or charge her real estate in this Commonwealth is derived solely from the Act of February 24th 1770, § 2, 1 Smith 307. The requirements of that act as to her separate examination and acknowledgment must be pursued and must so appear upon the face of the magistrate's certificate: Watson *v.* Bailey, 1 Binn. 470; Evans *v.* The Commonwealth, 4 S. & R. 272; Thompson *v.* Morrow, 5 S. & R. 289; Watson *v.* Mercer, 6 S. & R. 49; Fowler *v.* McClurg, Id. 143; Jourdan *v.* Jourdan, 9 Id. 268. The bond and warrant of attorney to confess judgment of a married woman are absolutely void, and so is a judgment upon a scire facias issued upon a judgment entered under such warrant, and a sheriff's sale founded upon it conveys no title to the purchaser: Dorrance *v.* Scott, 3 Wharton 309; Caldwell *v.* Walters, 6 Harris 79. "A married woman has no capacity to contract for the sale of her real estate or to convey it except in the precise statutory mode conferring the power:" Per Agnew, J., in Glidden *v.* Strupler, 2 P. F. Smith 402; citing a long beadroll of cases. It is manifest, then, that the receipt given in evidence in the court below under objection and exception ought not to have been admitted to affect her legal title. Even had there been an equity or resulting trust, it could not be proved in that way. To allow it would render the provision of the Act of Assembly nugatory, and take from the wife that protection which the law intends to throw around her. If such result could be accomplished by the adoption of a different form merely, for example, a distinct acknowledgment that the land had been bought and paid for with the money of another, and that she held in trust for him, we may be sure that it would not fail to be resorted to. The law means that in the act of disposing of or charging her realty a certain form and solemnity shall be observed, for the purpose of giving her the time and opportunity to reflect, and oppose the marital influence which may be brought to bear upon her. Even with all this form, it too often happens that by the threats or caresses of her husband she is induced to do what is ever after a source of regret.

After receiving this paper in evidence the learned judge below left it to the jury to say whether the interest of Mrs. Graham in the premises had not been that of a mere mortgagee. The theory of the defence seems to have been that she had loaned six hundred dollars to her mother, and that the deed had been taken to her mother, her sister and herself as security for the loan, and that her receipt with her husband's assent was a discharge of the debt

and satisfaction of the mortgage. The single fact upon which this whole theory appears to have been constructed was that the consideration of the deed was eighteen hundred dollars, which would be six hundred dollars by each of the grantees. Had the theory been supported by other evidence *aliunde*, the receipt in the handwriting of the husband and signed by the wife would no doubt have been evidence. But to establish a mortgage or trust it was incompetent. A married woman may be a mortgagee by an absolute deed with a parol defeasance, or her legal title may be affected by a constructive or resulting trust, but it must be made out in some other mode than by her admission or acknowledgment orally or in writing. The most formal and solemn declaration of trust by deed of a *feme covert* must be accompanied with a certificate of separate examination and voluntary acknowledgment, or it is not worth the parchment or paper upon which it is written.

There was not a spark of evidence in the case below of mortgage or other equity—nothing to rebut the legal conclusion from the deed conveying the legal title to her in fee simple of one-third of the premises. Even the receipt, had it been properly admissible for such a purpose, was no evidence of it. It contained no admission of mortgage or trust. She acknowledges the receipt of six hundred dollars, "money I had in the property my mother now owns." Conceding that as her mother owned no other real estate than one-third of the land in dispute that the paper refers to that, it would be a more reasonable inference that the six hundred dollars had been advanced to her mother to enable her to purchase her interest. That one-third was the only property she owned as far as appeared—not the whole land. It is a mere conjecture that she referred to the purchase-money of her own share, but it is a more reasonable one than the idea of there having been a mortgage to secure money originally advanced to her mother. She and her husband may have meant, and for myself I conjecture did mean, to sell out and release to her mother the interest which she had in the land for the price which she had originally paid for it : but it is too clear for argument that this could not be done in that way so as either to convey her legal title, charge it with an encumbrance or lien, or affect it with an equity or trust. If this was the nature of the transaction, and it had even been clearly proved by other evidence than her acknowledgment, it would have availed nothing, nor could she have been compelled as the price of her recovery of the land in ejectment to have refunded the purchase-money so received, as is conclusively shown in the opinion of Mr. Justice Agnew, in Glidden *v.* Strupler, before cited.

Both assignments of error must therefore be sustained.

Judgment reversed and *venire facias de novo* awarded.

THOMPSON, C. J., dissented.