# Miller *et al. versus* Wentworth.

1. In the absence of fraud or duress upon a wife, a certificate of acknowledgment of a deed by her is conclusive of the facts therein stated.

2. The substantial requirements of the Act of 24th February 1770, are a separate examination of the wife apart from her husband, her full knowledge of the contents of the deed and her voluntary consent to its execution.

3. The certificate of a justice of the peace to the acknowledgment of a deed by a married woman showed that "the said C. M. H. (the wife), being of full age, and by me examined separate from her said husband, and the contents of the said indenture being first fully made known to her, acknowledged that she signed, sealed and delivered the same without any fear or compulsion of her said husband." There was no evidence of fraud or duress upon the wife, and the grantee in the deed was a bonâ fide purchaser for value and without notice of the irregularity: *Held*, in an action of ejectment against the purchaser by the heirs of the wife, that her acknowledgment was sufficient.

4. Under these circumstances the fact that this acknowledgment was taken a few minutes before the wife signed the deed, though irregular, cannot be inquired into.

5. The "copy" of a lost instrument intended by the Act of Congress of 23d June 1874 (for stamping unstamped instruments), is a substantial copy, or such a draft of the original instrument as will identify the subject of the tax.

6. H. executed a deed of lands to W. and gave him money to buy the necessary stamps with; W. used the money for his private purposes and did not stamp the deed; it was destroyed a year and a half afterwards by fire, unstamped and unrecorded; a copy of it was made by the scrivener who drew the original, from memoranda and from a survey made by him and from me-

[Miller v. Wentworth.]

mory; this copy was duly stamped before a judge of the Common Pleas and so certified by him according to the above Act of Congress: *Held*, that this was a sufficient "copy" within the Act of Congress, and that by the stamping of such copy the original deed was restored to competency as an instrument of evidence.

7. One claiming title as heir of the grantor in an unstamped deed, upon the ground that the deed was invalid for want of a stamp, is not within the proviso of the Act of Congress of 23d June 1874, that "no right acquired in good faith shall in any manner be affected" by the stamping of unstamped instruments under the act.

June 7th and 8th 1876. Before AGNEW, C. J., MERCUR, GORDON, PAXSON and WOODWARD, JJ. SHARSWOOD and WILLIAMS, JJ., absent.

Error to the Court of Common Pleas of *Warren county:* January Term 1876, No. 135. Certified from Eastern District.

Ejectment, begun May 1st 1873, by Cynthia Miller and others, against Darwin Wentworth. The plaintiffs claimed title as heirs at law of Clarissa Howd; the defendant claimed under a deed to himself from Sylvester and Clarissa Howd.

In March 1867, Clarissa Miles, being seised of the property in question, married Sylvester Howd, at the advanced age of seventy-one years. In the spring of 1871, Howd and his wife sold the property to Wentworth, for $13,429.65, of which part had been paid at the time this action was brought, and the larger part was secured to be paid. On May 1st 1871, they executed a deed for the premises to Wentworth. The sufficiency of the acknowledgment of this deed by Mrs. Howd raised the first question in the case. It appeared that the deed was destroyed by fire in November 1872. At the trial, on December 7th 1875, after proof of its loss, J. C. Hamilton, the justice of the peace before whom the acknowledgment had been taken, testified that the certificate of the acknowledgment of the deed was in these words:—

"Be it remembered that on the 1st day of May 1871 before me, a justice of the peace in and for said county, personally appeared the above-named Sylvester Howd and Clarissa M. his wife, and acknowledged the above indenture to be their act and deed, and desired the same might be recorded. She, the said Clarissa M. Howd, being of full age, and by me examined separate from her said husband, and the contents of the within indenture being first fully made known to her, acknowledged that she signed, sealed and delivered the same without any fear or compulsion from her said husband."

Hamilton was called by the plaintiffs in rebuttal, and testified as to what took place when the deed was acknowledged before him:—

"I took the deed all drawn. I informed them I had the deed, and my impression is I read the whole deed, but cannot state pos-

[Miller *v.* Wentworth.]

itively. I asked in substance if they acknowledged it to be their act and deed. Mrs. Howd made no reply in words; Mr. Howd said nothing. Mrs. Howd then signed the deed, and I turned to Mr. Howd, and asked him to sign the deed, and he made the remark that it would not be necessary. I said it would be worthless without his signature. He said it was his wife's, and he had nothing to do with it; but he finally signed it. After he signed it, I took it with me to the office, and that ended the interview.

"Mrs. Howd was sitting to my left; Mr. Howd rather facing me and her. They remained in that position. She went to the table and signed it, and resumed her seat, and he did the same. They were four to six feet from me, and facing me. It was a number of days before I delivered the deed to Wentworth. I recollect of nothing said at the time of the acknowledgment about my delivering the deed. Mr. Howd, a few days after, directed me to deliver the deed, and counted out some money to pay for stamps. I delivered the money to Wentworth—$13.50. The deed had not been stamped. Mrs. Howd was in the room when Howd told me to deliver the deed, and the note was taken for purchase-money. I saw or heard no noise or threats or menaces from Mr. Howd. I asked her if she acknowledged it to be her free act and deed, and she gave a little laugh and signed it. I asked her the question and she signed it after. It was all closely connected."

There was no evidence of any fraud or duress in obtaining Mrs. Howd's acknowledgment, and Wentworth had no notice of any irregularity in the way in which the deed was acknowledged.

The other question in the case was, whether a copy of a lost instrument which had never been stamped, reconstructed principally from memory and never compared with the original, was such a "copy" as could be stamped under the Act of Congress of 13th June 1874. The facts on which this question arose were these: The original deed was delivered to Wentworth unstamped. At the time of its execution, the grantors gave him $13.50 with which to purchase stamps for it. Wentworth never bought the stamps, but, after a time, used the money given him by Howd for other purposes. The deed was in his possession unstamped for more than a year, although during that time he had opportunities for buying stamps for it. It was unstamped when it was destroyed by fire in November 1872. It had never been recorded.

On March 4th 1875, one Wiggins, executor of Sylvester Howd, caused a copy of this deed to be made and produced the same before the president judge of the Common Pleas of Warren county, for the purpose of affixing the proper stamps thereto. Stamps to the amount of $13.50 were duly affixed to this copy and cancelled by Wiggins in the presence of the judge, and a certificate of these facts made according to law by the judge upon the copy. The

[Miller *v.* Wentworth.]

same witness, Hamilton, testified that the circumstances under which this copy was made were these: "I was a surveyor by profession; I made a survey of the land before I made this deed; I made a survey, taking notes; I made a draft from the notes after the survey; I made the draft and found errors in the chaining; I resurveyed the ground and made notes of the resurvey; I copied the survey, as corrected, into a book; I made a draft of the two pieces on one paper. I was called on by W. D. Brown for a draft of the land in the deed. I furnished him a description; I had the draft before spoken of from the corrected survey; from that I copied the description I furnished to W. D. Brown for the bill to perpetuate evidence; I did not compare the description I handed Mr. Brown with the draft from which I made it; I made it in part from memory, aided by the draft, and part I knew without any draft, as I was familiar with the ground; I relied chiefly on the draft, although I had it in memory clearly; I never compared the description I made out with the description in the printed bill; I made the copy of the deed shortly before the first trial of this case; I took the description from the printed bill; I got the printed form of the deed from Amri Davis; I think it is like the form of the deed I first filled up; I made no comparison of this form with the form of the other deed I drew; I never compared the description in this with the description in the printed bill; I mean by copy my recollection of the original deed, assisted by what papers I had; they are the same grantors and the same grantees, and the paper includes the land described in the writ; there was other land in the deed besides what is described in the writ; my knowledge of contents is from memory, aided by all the papers; I do not know what became of the draft; there may be a variation in the words and forms of the words."

The court below (Wetmore, P. J.), under exception by the plaintiff, ruled that the copy stamped was a sufficient copy under the Act of Congress, and that the original deed was thereby restored to competency as an instrument of evidence, and, proof having been made of its loss, admitted secondary evidence of its contents.

The court charged, in effect, that the stamp laws had been sufficiently complied with, and further, that Mrs. Howd's acknowledgment was sufficient to pass her title.

Verdict for defendant and judgment, to which the plaintiffs below took this writ of error. The assignments of error raised the two questions mentioned above.

*Johnson & Lindsey* and *J. C. Strong,* for plaintiffs in error.— The grantee of a married woman must see that the deed to himself is properly acknowledged: Michener *v.* Cavender, 2 Wright 334. The statutory form of acknowledgment must be strictly followed:

[Miller *v*. Wentworth.]

Graham *v*. Long, 15 P. F. Smith 383; McCandless *v*. Engle, 1 Id. 310; and this must appear in the certificate. This acknowledgment and the certificate were a fraud upon the wife. Besides, the presence of the husband at the acknowledgment by the wife, raises a presumption of duress. This court will go behind the certificate in either case. Mrs. Howd's acknowledgment was taken before she signed the deed; this was irregular: Michener *v*. Cavender, *supra*.

The copy of an instrument, which can be stamped under the Act of Congress of 23d June 1874, is a literal transcript of the lost instrument; one which has been compared with it. Further, that act has a proviso that "no right shall be affected by stamping in pursuance of the act." The copy in this case was not stamped till after suit begun, when the rights of the parties were fixed; the case, therefore, falls within the proviso.

*W. D. Brown* and *R. Brown*, for defendants in error.—In the absence of fraud or duress practised on the wife, the certificate of acknowledgment is conclusive of the facts stated in it; it has been so decided in a line of cases, from Watson *v*. Bailey, 1 Binn. 470, down to Heeter *v*. Glasgow, 29 P. F. Smith 79. The certificate was a substantial compliance with the requirements of the law: Evans *v*. Commonwealth, 4 S. & R. 272; M'Intire *v*. Ward, 5 Binn. 301; Shaller *v*. Brand, 6 Id. 435. It appears that Mrs. Howd was examined apart from her husband, she knew the contents of the deed, and her will was free. The signing, sealing and acknowledging were contemporaneous; Michener *v*. Cavender does not apply to such a case. A vendee need not inquire whether the certificate is true in fact, if it is sufficient on its face. The copy stamped was a sufficient copy. The Act of 1874 was passed to raise a revenue; it should be interpreted to promote that object: Brinker *v*. Brinker, 7 Barr 53. The Act of Congress of 13th July 1866, sect. 9, is *in pari materia*; that provides for stamping copies of unstamped papers "to the satisfaction of the collector." The unstamped deed was valid to pass a title; its only disqualification was to its being used in evidence: Long *v*. Spencer, 1 Weekly Notes 435; Tripp *v*. Bishop, 6 P. F. Smith 424. Therefore the plaintiffs below acquired no rights upon Mrs. Howd's death.

Chief Justice AGNEW delivered the opinion of the court October 10th 1876.

The decision of two questions will determine this case. 1. The sufficiency of the acknowledgment of the deed from Mrs. Howd to Darwin Wentworth. 2. The sufficiency of the payment of the stamp duty. As to the first it is to be observed the evidence discloses only irregularity, and no imposition, coercion or other element of fraud or duress, in procuring the acknowledgment. The defend-

[Miller v. Wentworth.]

ant is a bonâ fide purchaser, for a full consideration, without notice of any irregularity; relying on the certificate of the magistrate, there being nothing on its face to put him upon inquiry. In such a case the certificate is conclusive of the facts stated in it, and parol evidence will not be received to impugn it: Barnet v. Barnet, 15 S. & R. 72; Jamison v. Jamison, 3 Wharton 457; Louden v. Blythe, 3 Casey 22; Williams v. Baker, 21 P. F. Smith 476; Heeter v. Glasgow, 2 Weekly Notes 1. The cases supporting the exceptions of fraud and duress prove the rule: Louden v. Blythe, 4 Harris 532; Michener & Wife v. Cavender, 2 Wright 334; Hall v. Patterson, 1 P. F. Smith 289; McCandless v. Engle, Id. 309.

These principles leave only a single inquiry. Is the acknowledgment of Mrs. Howd's deed sufficient on its face? It does not literally follow the words of the Act of 24th February 1770. Yet the rule is firmly established that if the essentials, or substantial requisites of the act appear in the acknowledgment, it is sufficient. So many cases have been decided on this point a particular examination of each is unnecessary: M'Intire v. Ward, 5 Binn. 296; Shaller v. Brand, 6 Id. 438; Id. 441; Jamison v. Jamison, 3 Whart. 472. The exceptional cases also prove the rule: Watson v. Bailey, 1 Binn. 479; Evans v. Commonwealth, 4 S. & R. 272; Thompson v. Morrow, 5 Id. 289; Hawley v. McClurg, 9 Id. 273. The substantial requirements of the Act of 1770 are a separate examination of the wife apart from her husband—her full knowledge of the contents of the deed—and her voluntary consent to its execution by herself: Evans v. Commonwealth, 4 S. & R. 273; Louden v. Blythe, 3 Casey 25; Louden v. Blythe, 4 Harris 532. The acknowledgment of Mrs. Howd, according to the secondary evidence of its contents, set forth that her husband and she appeared in person and acknowledged the indenture to be their act and deed and desired that it might be so recorded; that she was examined separate and apart from her husband; that the contents were first fully made known to her, and that she acknowledged that she signed, sealed and delivered the same *without any fear or compulsion from her said husband.* All the requisites of the Act of 1770 are thus given, unless we hold that the absence of a declaration of free will deprives it of sufficiency. It is reduced to this question, therefore, whether the words "without any fear or compulsion from her said husband," are equivalent to a declaration of free will. It certainly is, unless the legislative intent was to protect her from some other coercion, or fear, than that of her husband. But we know of none other intended. The law was founded on the common-law principle of marital unity, and subjection of the wife to the husband. Being covert the law intended that coverture, *pro hac vice*, should be suspended, by a separate examination and an expression of her will, without the fear or compulsion of her husband before her. We find no case exactly in point, but many where the purpose of

the law is said to be to free her from the control of her husband. For example see Evans *v.* Commonwealth, 4 S. & R. 273 ; Louden *v.* Blythe, 3 Casey 25 ; Louden *v.* Cowden, 6 S. & R. 274 ; Louden *v.* Blythe, 4 Harris 539 ; Shrader *v.* Decker, 9 Barr 14. The means of this special emancipation from the restraints of coverture were to be separation from the presence of her husband when she could speak freely into the private ear of the magistrate, whose duty it would be to probe the freedom of her will, and whose official character would be a practical protection from fear or constraint. Therefore when she has, on such an examination apart, and having a full knowledge of the act she is doing, declared that she signed, sealed and delivered the deed without any fear or compulsion of her husband, she has substantially declared that her will was free and her consent was voluntarily given.

Some of the cases are quite strong. Thus in Shaller *v.* Brand, 6 Binn. 435, it was held that all the requisites as to the freedom of the will were supplied by the words " voluntarily consenting thereto," omitting the words " without any coercion or compulsion of her said husband." So the averment of a full knowledge of the contents were decided to be supplied by a recital of what the deed was for : M'Intire *v.* Ward, 5 Binn. 296. So the words " seal and deliver" were supplied by " seal and acknowledge ;" and the absence of the word " compulsion " held not to be fatal : Jamison *v.* Jamison, 3 Whart. 457, 472. In view of the purpose of the law and the judicial interpretation of its provisions, we think the secondary evidence in this case presented a sufficient acknowledgment of the deed.

From the foregoing observations and authorities it will be seen that the alleged irregularity of taking the acknowledgment before the actual signature of Mrs. Howd cannot be inquired into in the absence of fraud or duress. Michener and Wife *v.* Cavender, 2 Wright 334, is a very different case. There the wife did not sign the mortgage either before or at the time of taking her acknowledgment. If her name became affixed it was long afterwards. Here the whole transaction was one and the same, and the order of time of signature was a mere irregularity, which could not be shown by parol to contradict the acknowledgment, in the absence of fraud or duress.

The second question relates to the sufficiency of the payment of the stamp duty. It seems that Mrs. Howd advanced to the defendant the money to pay for the necessary stamps; but he neglected to provide and apply them, and finally used the money for his private purposes. Having sold parts of the land, he handed the deed to Hamilton, to enable him to draw up deeds to the purchasers. Hamilton's office was burned, and Mrs. Howd's deed to defendant was consumed. This action was brought by Mrs. Howd's heirs against Wentworth, in possession, to recover, on the ground of the alleged invalidity of the deed, and it became neces-

[Miller *v.* Wentworth.]

sary to stamp the deed or a copy, to enable Wentworth to avail himself of it as evidence. But the deed being unrecorded, and no copy preserved, this became impossible. He therefore procured a draft of it to be made by Hamilton, the scrivener, as nearly as possible, from memoranda kept by him, and the survey, and from his memory, which was clear and distinct in all material respects. This paper, which was in fact a substantial copy of the deed, was presented to the judge, and permitted to be stamped, and certified by him according to the provisions of the Act of 23d June 1874: Laws U. S. 1874, p. 291. Was this sufficient to extinguish the duty and restore the deed to competency as an instrument of evidence?

This brings us to consider the intention of the Stamp Acts, and the interpretation to be placed upon the Act of Congress of 1874. The United States having repealed the stamp duties, and having shown an intention to relieve the citizen from the duty altogether in the future, we cannot suppose that the past requires the application of stringent rules, but that a just, fair and substantial compliance with the duty ought to be a sufficient performance. If the citizen has done all fairly within his power, if the officer of the law has accepted this performance, and if the United States have thereby received all their just dues, we ought not to stick in the bark by giving to the word " copy," in the Act of 1874, a signification so literal and so rigid that performance will be for ever prevented, and the citizen will lose irrecoverably the advantage of the deed as an instrument of evidence.

In the Turnpike Co. *v.* McNamara, 22 P. F. Smith 278, it was said of the stamp acts : " Thus the purpose is plain to prevent the use of the unstamped paper so long as it remains without payment of the tax or duty upon it. This is simply a disqualification of the instrument in the hands of the delinquent to prevent its use until he pays the tax." It was on that ground we held, in that case, it was not a federal rule for the regulation of evidence in state courts, but a means of compelling payment of the tax, and therefore within the domain of federal power ; otherwise an attempt by Congress to interfere with the domestic affairs of the state would be invalid. It was not the intention of Congress to destroy the rights of the states, but to compel compliance with the lawful acts of the United States. This was fully shown in the case of the Turnpike Co. *v.* McNamara. The intent of Congress was manifested, in the case of even entire non-payment of the stamp tax, in those provisions of the stamp acts which declare that " the title of a purchaser of land by deed duly stamped shall not be defeated or affected by the want of a proper stamp on any deed conveying said land by any person from, through or under whom his grantor claims or holds title." Act 1864, sect. 158, Laws United States 293 ; Act 1866, p. 143.

[Miller *v.* Wentworth.]

Thus the laws of Congress recognise the fact that the title passes by the unstamped deed, though in the hands of the delinquent no use can be made of it as evidence, until he pays the tax. This accords with our own law in a similar aspect. By a deed duly executed the title passes and its total destruction or even its cancellation by the grantee himself will not revest the title in the grantor: Withers *v.* Atkinson, 1 Watts 236; Wiley *v.* Christ, 4 Id. 199; Rifener *v.* Bowman, 3 P. F. Smith 313. In the last case C. J. WOODWARD presents the distinction between the estate and the deed very clearly. "If a grantee alter or destroy his title deed, yet his title to the land is not gone. It is the instrument which is rendered void, not the estate." Congress has shown its regard, not only for the preservation of the estate which passed by the deed, but for the instrument itself by giving to the delinquent a *locus poenitentiae*. He may pay the tax and relieve his deed. Without a special reference to the laws prior to the Act of 1874 this intent will be discovered in the 163d section of the Act of 1864, U. S. Laws 295; 153d sect., Id. 292; also, Act 1866, Laws U. S., p. 143; Act of June 6th 1872, sect. 36, Laws U. S., p. 256. Coming to the Act of 1874, *supra*, which governs this case, we find that Congress having by the Act of 6th June 1872, sect. 36 (Laws U. S., p. 256), repealed all stamp duties except on bank-checks, drafts, and orders, passed the Act of 1874 expressly and solely to "provide for stamping unstamped instruments, documents or papers." The act is wholly remedial, excepting nothing from its operation. It provides that "all," when "stamped by any person having an interest therein, or when the original is lost, a copy thereof, at any time prior to the 1st day of January 1876," "shall be as valid to all intents and purposes as if stamped when made, signed or issued." With this manifest remedial intent of Congress before us, to relieve all papers from the disqualification of the statute on payment of the tax within the time limited, what is to be done with that vast majority of documents of which no copy is ever made or preserved, if lost, destroyed. or stolen? Are we to hold that payment of the tax cannot be made, and that the paper is irrecoverably gone as an instrument of evidence, and no evidence secondary or otherwise can be given of its contents? We think not, and are of opinion that a substantial copy, or such draft of the instrument as will identify the subject of the tax, can be used to enable the party to avail himself of the remedial benefit of the law. The law has provided its own officer to superintend the performance of the duty, and protect the interest of the government; and he having sanctioned the copy and payment upon it, we ought not to deprive the citizen of the benefit intended for him. The United States have received their dues, and now the instrument is so restored to competency that secondary evidence of its contents should be received. We think no error was committed in receiving it.

[Miller *v.* Wentworth.]

In regard to the exception in the Act of 1874, that "no right acquired in good faith shall in any manner be affected by such stamping as aforesaid," we may add, that the plaintiffs are not within it. They are mere volunteers upon whom the law casts the title of Mrs. Howd, if she had any at the time of her death. Having no estate remaining in her, none descended to them; or if it came to them *ad interim*, it cannot be said they *acquired* it in good faith, in the sense of the act. They gave nothing for it, and at her death they merely stood in her place, and could take no more than she had. The stamping being good as to her, it is good as to them. These views dispose of the entire case, for the deed being valid, in respect both of its acknowledgment and the stamp duty, the defendant is protected in his possession.    Judgment affirmed.