CRESSONA ETC. ASS'N v. D. SOWERS ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF SCHUYLKILL COUNTY.

Argued February 17, 1890—Decided April 28, 1890.
[To be reported.]

1. A certificate of acknowledgment of a deed or mortgage, executed by a husband and wife prior to the passage of the act of May 25, 1878, P. L. 149, and which is defective in omitting the venue, in failing to show that the justice was of the proper county, and in omitting to state an acknowledgment by the husband, may be reformed under said act on proof of the requisite facts.
2. An answer which avers, by way of defence to a bill praying for such reformation, that the part of the certificate setting out a separate examination by the wife, (which is in due form and needs no reformation,) is untrue in point of fact, is not responsive to the bill, and, if regarded at all, must be treated as a cross-bill to have that portion of the certificate set aside.
3. But, if the instrument was in fact executed by the wife voluntarily and without coercion, with a full knowledge of its contents, and for a valuable consideration actually received, and the transaction was free from all fraud, equity will not set aside the certificate of the wife's separate examination, though the same may be untrue.
4. A certificate of acknowledgment is a judicial act, which, in favor of bona fide purchasers without notice, is conclusive of the facts therein stated, and, as to other persons, in the absence of proof of fraud or duress connected with the acknowledgment, it is also conclusive; and this rule is applicable to mortgages as well as to deeds.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 326 January Term 1889, Sup. Ct.; court below, No. 5 January Term 1886, C. P. in Equity.

On December 21, 1885, the Cressona Saving Fund & Building Association filed a bill in equity against Catharine Sowers and Daniel Sowers, her husband, praying for a decree reforming, in accordance with the actual facts, a certificate of acknowledgment subjoined to a conveyance of certain land from the defendants to one Daniel Ney for the consideration of $100, said certificate, as written on the deed, immediately beneath

the signature of Catharine Sowers to the receipt for the consideration money, being in the following form:

" And in due form of Law acknowledget the within or foregoing Indenture to be their act ond Deet and desired the same might be recordet as such and the said Catharine Sower being of full age and seperated and apard from her said husbent by me thereon Privently Examinet and the full Contences of the above deed being by me first made known unto her dit thereupon declar and say that she dit volunterily and of her own free will and accord sign seal and as her act and deed deliver the above written indenture deed, or Convoyent without any coercion or compulsion of her said husbent.

" Witness my hand and seal the day and year aforesaid.

"FRANKLIN WEBBER, [Seal.]

"Justice of the Peace."

The bill averred that, in fact, the conveyance aforesaid was duly acknowledged by both the grantors; that Franklin Webber, who took the acknowledgment, was a justice of the peace in and for the county of Schuylkill, wherein the acknowledgment was taken; and that Ney, the grantee, subsequently conveyed said land to the plaintiff as security for a loan made by the plaintiff to Catharine Sowers.

The answer of the defendants admitted that on August 15, 1868, the defendants borrowed $100 from Daniel Ney, and intended to assign him their title to said land as collateral security for its re-payment, and they signed the alleged conveyance mentioned in the bill; but averred that the same was not acknowledged as alleged in the bill, nor was its acknowledgment duly certified. The answer contained, also, the following averments:

2. . . . . We aver that no separate acknowledgment of the said Catharine Sowers was taken; nor was she examined separate and apart from her said husband, or the contents of said assignment made known to her by the justice; and she did not voluntarily and of her own free will and accord sign, seal, and as her act and deed, deliver the same, in the form that the same appears to have been written, but was informed by both her husband and the said Ney, who were all the time present, that the same was simply as collateral to secure their promise to Ney to repay him said loan of one hundred dollars.

Statement of Facts.

5. . . . . We admit that Franklin Webber was a justice of the peace, in and for said county, at the time of said alleged acknowledgment, but we deny that he took said acknowledgment according to law, or that we executed said alleged assignment in his presence or before him according to law, no separate examination of the said respondent, Catharine Sowers, whatever, having been made by him, of all which irregularity said Daniel Ney, under whom complainant claims, had notice, as he was personally present during the entire transaction.

The prayer of the answer was that the bill be dismissed and that the defendants be dismissed with costs.

Issue having been joined, the court appointed *Mr. J. C. Kline*, examiner and master, who found the facts as follows:

On June 24, 1868, the Schuylkill & Susquehanna Railroad Company, by their deed of that date, conveyed the land, described in complainant's bill, to Catharine Sowers, wife of Daniel Sowers, for $442.78. Said deed was acknowledged on the same day, but not recorded until May 9, 1887. On August 15, 1868, the said Catharine Sowers and Daniel Sowers, her husband, deeded this property to Daniel Ney in consideration of the sum of $100. This conveyance is rather informally indorsed on the original deed from the Schuylkill & Susquehanna Railroad Company, but is to all appearance an absolute conveyance in fee of this property to Daniel Ney.

This last conveyance though acknowledged August 15, 1868, and fully executed long before the deed was recorded, was in fact not itself recorded until October 25, 1879.

On April 27, 1877, Daniel Ney conveyed the property to the Cressona Saving Fund & Building Association, the complainant. The consideration named is $158, but this deed also shows that though the conveyance from Sowers and wife to Ney was apparently an absolute conveyance of the property in fee, it was in fact only " as collateral security for the payment of a certain amount of money, and is hereby deeded to the Cressona Saving Fund & Building Association as security for a loan made by Catharine Sowers of $400.00, and when fully paid the same is to be deeded over to said Catharine Sowers, without any consideration money, or exceeding one dollar." The whole transaction is clearly a mortgage of this property, first to Daniel Ney and next to the Saving Fund Association. This last deed is recorded May 9, 1877.

### Statement of Facts.

The difficulty in that case arises out of what is palpably a most stupid blunder of the justice who took the acknowledgment of Daniel Sowers and Catharine Sowers of their deed to Daniel Ney. The justice without any introduction, or without following or adopting what is generally the first half of the certificate of the acknowledgment, and without showing who appeared before him, after signing his name as a witness to the deed immediately plunged into the middle of the usual acknowledgment, as follows: "And in due form of law acknowledged the within or foregoing indenture to be their act and deed," etc. Then follows the usual certificate as to the separate examination of Catharine Sowers, and her acknowledgment of the deed as her voluntary act, etc., which latter part is substantially correct and unimpeachable.

It will be seen at a glance that the defects in this acknowledgment are three-fold: 1. No "Scilicet" to show where this took place. 2. Nothing to show the official character of 'Squire Webber, except his signature as a justice of the peace. 3. Nothing to show who appeared before 'Squire Webber, or who acknowledged the deed, except so far as Catharine Sowers's name appears later on in the acknowledgment, but as to Daniel Sowers there is absolutely nothing to show that he appeared before the justice or acknowledged the deed.

To overcome these defects the complainant has conclusively proved by the testimony before the examiner, and it is not denied by the respondents, as follows : That this whole transaction took place in South Manheim township, in Schuylkill county, and that the deed was then and there, August 15, 1868, duly executed by the grantors before Franklin Webber, who was then and there a justice of the peace in and for said township and county, duly commissioned, and that his official character was well known to all parties concerned; that in fact Daniel Sowers appeared before Justice Webber, as well as Catharine Sowers; that both of them duly executed the deed in the presence of the justice, whose name was signed thereto, at the time, as a witness to its execution; and further, also, that both of them then and there also acknowledged the deed before the justice.

On the other side, it is averred by the respondents, in their answer filed, that no separate acknowledgment of Catharine

### Statement of Facts.

Sowers was taken, nor was she examined separate and apart from her said husband. Respondent's answer further avers that the contents of said assignment were not made known to her by the justice, and that she did not voluntarily and of her own free will and accord sign, seal, and as her act and deed, deliver the same, etc.

On this subject, the testimony, admitted under objections of complainant's counsel, shows that in fact Catharine Sowers was not examined separate and apart from her husband, but that Daniel Sowers, her husband, was present in the room with her all the time, as were also Daniel Ney and the justice and his son Joseph. So, in this respect the acknowledgment was clearly irregular. But as to the other matters averred by the respondents, the master finds that they are not borne out by the testimony, not even by respondents' own evidence; but, on the contrary, the evidence shows that Catharine Sowers was fully informed by the justice of the nature and character of the conveyance, and that she executed, delivered and acknowledged it freely and voluntarily, and there is absolutely no pretence of fraud, coercion, compulsion or duress.

—The testimony of the defendants, referred to in the foregoing findings of fact, was as follows:

Daniel Sowers testified on cross-examination: I persuaded my wife to make the deed; Samuel Dwitsch and Albright coaxed me to get her to do it; she was not willing to do it. I coaxed at her for two weeks before she was satisfied to do it. Of course I talked to her to go to the 'Squire's; at the 'Squire's we talked nothing about it, we had it all fixed before we went to the 'Squire's; I talked to her and coaxed her before we went; nothing said at the 'Squire's; she was persuaded to do it.

Re-direct: Of course I talked to her. I thought the man was master over the woman, and that is the way I got her around. I did not force her to it. I talked to her that I had to work hard. She did not say to the 'Squire, she did it of her own free will.

Catharine Sowers testified: I recollect well when we went over to 'Squire Webber's to make the paper to Daniel Ney; we were all together in the room; 'Squire did not take me aside and did not examine me separate from my husband; he did not ask me if I signed of my own free will; Daniel Ney

Master's Report.

was present all the time; my husband, Daniel Sowers, Daniel Ney, myself and 'Squire Webber, and his son Joseph Webber was in at the time I signed it; I had nothing to do with the Saving Fund at all, it was all done by my husband and Ney, and about the Saving Fund I know nothing.

Cross-examined: I had nothing against signing the deed at the 'Squire's office; I signed and acknowledged it; the 'Squire did not explain it to me that I know of; I have no learning of any kind. It was ordered that the deed was only to be given to Ney as bail. My man did not act as agent for me. I guess my husband got the money from the Saving Fund; I got none; I don't know that he got it, I was not along; I did not see him get it; he said he got it, and that is all I know. I was against getting the money; it makes no difference whether I was against it, when he got the money; I said nothing to the 'Squire at the time that I would not sign; there was nothing said there at the time that I know of; what I did then was done by my own free will. I was opposed to this before we went to the 'Squire's until my husband forced me and persuaded me into it. He said the people said it was such a good thing to go into; he did not threaten; that is all, he said it was a good thing to get into.

—There was testimony tending to show that the money due from Mrs. Sowers to Ney was paid out of the sum borrowed from the plaintiff.

Upon the facts found by him the master reported, as his opinion: 1. That the act of May 25, 1878, P. L. 149, providing for the curing of certificates of acknowledgment defective in form, not being expressly made to operate prospectively only, applied to the present case, although the deed in question was executed before its passage; and the palpable defects in this certificate presented just such a case as the act was intended to cover. 2. That, in view of the facts shown by the testimony and found by the master, justice and equity required that this certificate be reformed in accordance with the facts stated in his report. 3. That, inasmuch as Catharine Sowers herself admitted upon the witness stand that she executed the deed voluntarily and of her own free will, and there was not a shadow of a pretence of fraud, imposition, coercion or duress, testimony

was not admissible to impeach the averment of the certificate that she was examined, separate and apart from her husband: citing Williams v. Baker, 71 Pa. 482; Heeter v. Glasgow, 79 Pa. 83; Miller v. Wentworth, 82 Pa. 280; Singer Mfg. Co. v. Rook, 84 Pa. 442. The master accordingly recommended a decree of reformation as prayed for in the bill, and that the defendants be ordered to pay the costs of the proceedings.

The defendants filed with the master exceptions to his report alleging, inter alia, that, having found as a fact that Catharine Sowers was not examined separate and apart from her husband, the master erred in deciding, as a matter of law, that the acknowledgment was a legal and valid one;[1] and he had no jurisdiction to report a decree reforming the certificate, nor the court to make one, as the act of assembly upon the subject required that a legal and proper acknowledgment should actually have been taken, and the decree recommended was not in accordance with, nor warranted by the facts found.[2]

These exceptions, having been overruled by the master, were afterwards renewed before the court. After argument thereof, the court, *Pershing, P. J.*, filed an opinion, in part as follows:

The respondents in their answer admit that Webber was a justice of the peace. They say: " We deny that he took said acknowledgment according to law, or that we executed said alleged instrument in his presence or before him according to law, no separate examination of the respondent, Catharine Sowers, whatever, having been made by him, of all which irregularity said Daniel Ney, under whom complainants claim, had notice, as he was personally present during the entire transaction."

It appears from the evidence that at the time Justice Webber took the acknowledgment of Mrs. Sowers, her husband and Ney were both in the room. It will be observed that the certificate of her acknowledgment is in exact compliance with the statute. The defect in the certificate is, that it does not show affirmatively that her husband joined in it. The certificate is, that they (omitting names) acknowledged the deed, and then that the " said Catharine Sowers" was examined separate and apart from her " said husband." That both did acknowledge the deed is clearly proved, and neither fraud nor coercion is shown to have been practiced on Mrs. Sowers.

Arguments.

It may be doubted whether the answer is responsive to the bill of the complainant. The object of the act of 1878 was to provide a way by which a certificate of acknowledgment, defective in its statement of the facts, might be reformed; and not to enable a party who resists this to assail and have set aside that part of the certificate which is good.

The certificate of the acknowledgment of a deed or mortgage is a judicial act, and in the absence of fraud or duress, is conclusive of the facts therein certified; nor can it be impeached by proof of fraud or duress in the acknowledgment, against a bona fide purchaser without notice: Hornbeck v. Building Ass'n, 88 Pa. 64; Heeter v. Glasgow, 79 Pa. 79; Miller v. Wentworth, 82 Pa. 280; Singer Mfg. Co. v. Rook, 84 Pa. 442. It is not necessary to cite other cases. An acknowledgment taken by a justice of the peace may be good, without naming county or state: Ross's App., 106 Pa. 82.

The evidence shows that the Cressona Saving Fund paid to Mrs. Sowers four hundred dollars, and received as its only security a transfer of the deed made by her and her husband to Daniel Ney. There is no evidence that the Saving Fund had any notice whatever that the certificate of the justice, that she had been examined separate and apart from her husband, was not strictly true. The Saving Fund occupies the position of a bona fide purchaser for value, without notice, and is therefore protected.

[We think the master reached a correct conclusion, and now direct that a decree be drawn in conformity with his recommendation, reforming the certificate of acknowledgment made by Catharine Sowers and Daniel Sowers before Justice Webber, in their deed to Daniel Ney; and the exceptions to the master's report are hereby overruled.] [3]

A final decree, as directed, having been entered, the defendants took this appeal, specifying that the court erred:

1, 2. In dismissing defendants' exceptions.[1] [2]

3. In entering the decree recommended by the master.[3]

*Mr. J. W. Moyer,* for the appellants:

1. Under the act of February 24, 1770, 1 Sm. L. 307, one of the absolute requisites of a good acknowledgment to a convey-

Arguments.

ance of the wife's real estate, is an examination separate and apart from her husband: McCandless v. Engle, 51 Pa. 314; Glidden v. Strupler, 52 Pa. 400; Graham v. Long, 65 Pa. 383. That this most vital requisite is wanting in the present case, is conclusively established. From Watson v. Bailey, 1 Binn. 470, down to Hornbeck v. Building Ass'n, 88 Pa. 64, an unbroken line of decisions hold that defective certificates of acknowledgment cannot be aided by parol testimony. This is still the rule in legal proceedings. Had the court jurisdiction in equity, under act of May 25, 1878, P. L. 149, to reform this certificate?

2. The title and body of that act indicate that such jurisdiction is conferred "in certain cases" only, and these cases are defined by § 1 to be those in which it is alleged and proved that legal and proper acknowledgments were in fact taken, but defective certificates thereof given. The court is then to reform the certificate "in accordance with the actual facts." If this language means anything, it means that the jurisdiction exists only when the acknowledgment was in fact regularly taken. Otherwise, how could the court decree according to the actual facts? That such was the intention, see note (e), Purd. Dig., 11th ed., 571. If the court had jurisdiction in this case at all, it was to decree a certificate of joint acknowledgment simply, omitting the statement that there was a separate examination. Could a certificate have been decreed, if in point of fact no acknowledgment at all had been taken?

3. Is the plaintiff protected on the ground of being an innocent purchaser for value? The defeasance, in the so-called deed, reciting that the land was conveyed to Ney as collateral security, makes the transfer to the plaintiff, not a mortgage, but merely an assignment of a mortgage: Jaques v. Weeks, 7 W. 261; Manufacturers' Bank v. Bank of Penna., 7 W. & S. 335; Wilson v. Shoenberger, 31 Pa. 295; Corpman v. Baccastow, 84 Pa. 365. The assignee of a mortgage takes it subject to all defences, including defects in execution: Michener v. Cavender, 38 Pa. 336; McCandless v. Engle, 51 Pa. 314; Ashton's App., 73 Pa. 153; Earnest v. Hoskins, 100 Pa. 558. The testimony shows that Mrs. Sowers was no party to the transaction with the plaintiff, the loan from it being in reality made to her husband, and she is not estopped: Glidden v. Strupler, 52 Pa. 400.

Opinion of the Court.

4. Where there is fraud or duress, parol evidence has always been freely admitted to overthrow the certificate of acknowledgment, even before the act of 1878: Schrader v. Decker, 9 Pa. 14; Louden v. Blythe, 16 Pa. 532; s. c. 27 Pa. 25; McCandless v. Engle, 51 Pa. 313. While, in this case, there was perhaps no legal duress, there was what is just as fatal in law, viz., moral constraint of the wife. Taken in connection with the fact that she was not given the opportunity before the justice to refuse her consent, which the law has provided for, the fact that, after two weeks, she reluctantly succumbed to her husband's pleadings, representations and persuasions, is sufficient to invalidate the whole transaction: McCandless v. Engle, 51 Pa. 313; Michener v. Cavender, 38 Pa. 334. The acknowledgment is void for other reasons, also: Myers v. Boyd, 96 Pa. 427.

*Mr. W. F. Shepherd* (with him *Mr. Brua C. Keefer*), for the appellee:

A certificate cannot be impeached for fraud or duress in the acknowledgment, as against a bona fide purchaser without notice; and, especially, it cannot be impeached where no fraud or duress is shown: Hornbeck v. Building Ass'n, 88 Pa. 64; Heeter v. Glasgow, 79 Pa. 79; Miller v. Wentworth, 82 Pa. 280; Singer Mfg. Co. v. Rook, 84 Pa. 442. There is no evidence that the plaintiff had any notice whatever that the statement of a separate examination in the justice's certificate was not strictly true, and therefore it occupies the position of a bona fide purchaser and is protected.

OPINION, MR. JUSTICE MITCHELL:

This is a bill under the act of May 25, 1878, P. L. 149, to reform the acknowledgment of a deed. The defects sought to be cured arise solely out of the omission of the justice to insert the first few lines of the ordinary form, and his starting with the phrase, "and in due form of law acknowledged," etc. From that point on, the acknowledgment is regular and complete. The defects, therefore, are the absence of the venue, the failure to show that the justice was of the proper county, and the omission to state the presence and acknowledgment by Daniel Sowers. All these defects are purely technical, and

the master has found that the facts existed on which the reformation prayed can be properly decreed. So far, therefore, it is the exact case which the statute contemplated, where the actual facts are in accordance with law, but the certificate fails to set them out in due form.

Why, then, should not the relief be granted? Respondents in their answer admit all the necessary facts for the relief asked, but set up that the concluding part of the certificate, as to the separate examination and acknowledgment by Catharine Sowers, is not true in fact. This part of the answer, clearly is not responsive to the bill, and, if regarded at all, must be treated as a cross-bill in which the respondents are the actors seeking relief. So regarded, the case is entirely without merit on the part of the appellants. They signed the deed, the wife signed the receipt, got the money, and now asks a court of equity to help her to fraudulently nullify her own grant. And on what grounds? Apart from mere technical defects of the instrument, the substance of her answer is in the averment that she did not voluntarily sign, seal, and, as her act and deed, deliver the same " *in the form that* the same appears to have been written," but was informed by her husband and Ney "that the same was simply as collateral to secure their promise to Ney to repay him." The deed is in form an absolute conveyance, and she avers that it should have been a mortgage. Had she filed the bill against Ney to reform the deed in that respect, she would have had a case for relief; but it would have been a conclusive answer that, as the facts show, Ney admitted that it was only a mortgage, treated it honestly as such, and on payment of his loan conveyed the property to the Saving Fund, expressly as security for the loan they were about to make to Mrs. Sowers, and to be re-conveyed to her without further consideration on her payment of that loan.

As regards the Saving Fund, she is in no better position. The essential fact of separate examination and acknowledgment is regularly certified. Suppose the officers or counsel had noticed the formal defects in the first part of the acknowledgment, and had inquired and learned the actual facts; would they not have been justified in relying on the certificate as it is? Would appellants now be permitted to take advantage of formal and immaterial omissions, as to which the facts are

Opinion of the Court.

against them, to avoid the conclusive effect of the certificate of the material fact? The certificate is a judicial act, and public policy, for the safety of parties dealing with real estate, requires that its conclusiveness shall be maintained. The law on this subject is stated by the present Chief Justice in Heeter v. Glasgow, 79 Pa. 79: "The true rule deducible from the authorities is that the certificate of the justice . . . . . in the absence of fraud or duress, is conclusive as to the facts therein stated. A purchaser bona fide, and without notice of the fraud, is protected against it; but, as to other persons, parol evidence has been admitted to show fraud or duress connected with the acknowledgment." See, also, Williams v. Baker, 71 Pa. 476; Miller v. Wentworth, 82 Pa. 280; and, as to the applicability of the rule to mortgages, Singer Mfg. Co. v. Rook, 84 Pa. 442. It is sufficient to add that the master finds "there is absolutely no pretence of fraud, coercion, compulsion, or duress."

Nor does the evidence present any case for equitable relief in regard to the transaction with the Saving Fund. It is true, Mrs. Sowers says she "had nothing to do with the Saving Fund at all," but this means, no personal communication. The words are used in connection with personal knowledge from which she could testify. The testimony of Lynch shows that she was party to the arrangement by which Ney was paid and the property transferred to the Saving Fund as security for the new loan, and her own testimony shows that she at least knew about it at the time. When she says, "I was against getting the money" from the Saving Fund, we think it is clear that she means her judgment was against it, but she yielded to her husband's judgment or persuasion, as she had before in the loan from Ney. This falls far short of duress or coercion which can be set up as ground for defeating the deed.

The part of the certificate which appellants now object to is regular, and needs no amendment, nor does the appellee's bill ask any. The decree of the court below leaves that as it is, and amends the other parts in accordance with the real facts. In so doing, it follows exactly the act of 1878. On the other branch of the case, in which the respondents seek relief, they have shown no equity to entitle them to set aside the regular and formal part of the certificate.

Decree affirmed.